<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 12a0093n.06

**No. 10-5835**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jan 26, 2012***

LEONARD GREEN, Clerk

**UNITED STATES OF AMERICA,**

    **Plaintiff-Appellee,**

**v.**

**ERNEST STENNIS,**

    **Defendant-Appellant.**

_____ /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

**BEFORE:**    **CLAY, ROGERS, and DONALD, Circuit Judges.**

    **CLAY, Circuit Judge.**  Defendant Ernest Stennis appeals an order by the district court denying Stennis' motion to suppress firearms and crack cocaine found on his person during a traffic stop. The district court reasoned that the officers had reasonable suspicion to believe Stennis was armed and dangerous and found that the pat down did not exceed the proper scope of a protective frisk. We agree and **AFFIRM**.

**BACKGROUND**

    On March 4, 2008, a federal grand jury for the Eastern District of Tennessee returned a three-count indictment, charging Stennis with one count each of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); possession of a firearm in

furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

On August 22, 2008, Stennis moved to suppress the drugs and firearms that were recovered

from his person during a routine traffic stop. Following two suppression hearings presided over by

a magistrate judge, the district court conducted a *de novo* review of the basis for the search and

adopted the magistrate judge's recommendation to deny Stennis' motion. In doing so, the district

court found the following facts:

> The evidence that forms the basis of these charges was discovered on April 8, 2007, during a traffic stop. During the traffic stop, Officer David Roncska asked defendant for permission to search his vehicle and defendant gave his consent. Officer Roncska asked defendant to get out of his car and defendant complied. Defendant uses a wheelchair and Office[r] Roncska assisted defendant in getting from his vehicle to the wheelchair. Officer Roncska then searched his person and found guns and narcotics in defendant's pants. Defendant states that this search was without probable cause, a search warrant, or consent.
>
> Magistrate Judge Shirley held an evidentiary hearing on September 15, 2008, ("initial suppression hearing") on defendant's Motion to Suppress Evidence. At that hearing, Officer Roncska testified about the traffic stop and a DVD of the traffic stop was admitted into evidence. Officer Roncska testified that as the defendant exited his car and sat in his wheelchair, Roncska noticed bulges in the defendant's waistline and groin area that he believed were consistent with weapons. Officer Roncska testified that he also believed that defendant may have had weapons because the officer was familiar with defendant based upon information provided by a woman and contact with the defendant during a prior investigation. Specifically, Officer Roncska testified about one month prior to the traffic stop, he responded to a call in which a man named Aaron alleged that his girlfriend, Joyce, sold or otherwise got rid of a large amount of his property. Officer Roncska testified that he questioned Joyce and she admitted that she traded the property to a man named Ernest for crack, that this man was in a wheelchair, lived nearby on Riverside Drive, and carried guns in the groin area of his pants. During that prior investigation, Officer Roncska went to the location on Riverside Drive described by the woman and found an individual named Ernest who was wheelchair bound. Officer Roncska stated that, when he stopped defendant, he recognized him as the same man from this prior investigation.
>
> During Officer Roncska's testimony, he was asked if he had any documents relating to the prior encounter with defendant. Officer Roncska indicated that his

audio and video was recording at the time of the incident and that he was attempting to get those records so that they could be provided to the Court. Assistant United States Attorney Hugh Ward asked if he could file the DVD once he received it, and Magistrate Judge Shirley stated that he could.

On October 15, 2008, Magistrate Judge C. Clifford Shirley filed his original R&R, in which he recommended that defendant's motion to suppress be denied. Judge Shirley found that Officer Roncska's testimony was credible and that his observation of bulges in defendant's clothing along with the information he knew from his prior investigation provided Officer Roncska with a reasonable basis to believe that defendant was or might be armed and dangerous. Judge Shirley found that this justified a *Terry* pat-down search and Officer Roncska stayed within the scope of a *Terry* search until he felt [what] he believed to be a weapon and then he was entitled to reach under defendant's clothing to retrieve it.

On the same day as Magistrate Judge Shirley entered the original R&R, the government filed the DVD containing the audio recording of Officer Roncska's prior encounter with defendant ("late-filed DVD"). The late-filed DVD contains the recording from Officer Roncska's in-car camera and microphone attached to his belt during the investigation of an incident which occurred on December 27, 2006. During this incident, Officer Roncska and Officer Jeremy Jinnett[] were called to the home because a man identified as Aaron complained that his girlfriend, Joyce, sold some of his property to an individual in exchange for crack. Joyce eventually admitted that she used crack cocaine and that the last time she used crack was the day before. She stated that she traded the property in question to an individual named Pete for crack. She stated that Pete lived "up the road," in the second trailer on the right of Riverside Drive with a Christmas tree out front. When asked what Pete looked like, she described him as "crippled," stated that he carried a pistol and that he was "forty-something." She further explained that she lived with his wife who was "light-skinned" and about five feet, six inches tall. Joyce asked the officers multiple times not to tell Pete that she told the officers about him, stating that if they did, Pete would kill her.

The officers went to the home described by Joyce, and defendant's wife confirmed that her husband used a wheelchair and she stated that his name was Ernest. She allowed the officers to enter their home and the officers spoke to defendant. When the officers told defendant that they received a report that there was stolen property in his home, defendant admitted that he purchased a plasma screen television and a computer from a woman named Joyce.

In light of the filing of this DVD, the defendant filed a Motion to Reconsider, requesting that the Magistrate Judge reconsider the R&R in light of the new evidence, and an objection to the original R&R, to which [the] government filed a response. Magistrate Judge Shirley granted defendant's Motion to Reconsider and held a second evidentiary hearing on the Motion to Suppress Evidence on December

8, 2008 ("reopened suppression hearing"). Officer Roncska and Officer Jinnett[] testified at this hearing regarding the late-filed DVD.

In addition to testifying about the evidence on the late-filed DVD, Officer Roncska testified that he responded to Joyce and Aaron's home on two occasions after the December 27, 2006 visit. The first occasion was when he responded to a call about a car fire and arrived to find Aaron's Land Rover in flames. Joyce and Aaron alleged that defendant and other individuals set Aaron's car on fire in retaliation for them speaking to the police about defendant. They identified the person who set the fire as Ernest and Joyce said that the person was in a wheelchair. Officer Roncska's next encounter with Joyce and Aaron occurred when Officer Roncska followed up on a 911 call regarding alleged threats defendant made to Joyce and Aaron.

Officer Jinnett also testified about the evidence on the late-filed DVD and the incident in which Aaron's car was on fire. Officer Jinnett testified that Joyce and Aaron said that the fire was in retaliation for them speaking to the police about the trade of electronic equipment for crack and that the person responsible for the fire was named Pete.

Following the hearing, Magistrate Judge Shirley filed the Amended R&R, in which he again recommended that the motion to suppress be denied. Despite some minor factual inconsistencies between Officer Roncska's testimony at the original hearing and his testimony at the reopened hearing, including his recollection of [] the name Joyce used to identify the defendant and the date of this initial encounter with defendant, Judge Shirley found Roncska's testimony credible. Ultimately, Judge Shirley found that the bulges in the defendant's clothing observed by Officer Roncska along with the information from his earlier investigation that the Defendant carried a pistol and had threatened to kill those whom he believed had exposed his drug business provided Officer Roncska with justification to believe his safety might be at risk. Additionally, Judge Shirley found that Officer Roncska did not go beyond the scope of a *Terry* frisk prior to feeling what he believed to be a weapon.

(internal citations omitted).

Based on these facts, the district court agreed with the magistrate judge's recommendation and found that the officers had reasonable suspicion to conduct a frisk of Stennis' person and that the pat down did not exceed the scope permitted under *Terry v. Ohio*, 392 U.S. 1 (1968).

Following the district court's unfavorable ruling, Stennis pleaded guilty to possession with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime. Pursuant

to a plea agreement, the government dismissed the third count, and Stennis preserved the right to appeal the suppression issue. Shortly thereafter, Stennis lodged this timely appeal. Original jurisdiction exists under 18 U.S.C. § 3231; this Court takes jurisdiction under 28 U.S.C. § 1291.

## ANALYSIS

### I.      Standard of Review

This Court applies a mixed standard of review in evaluating a district court's ruling on a motion to suppress. *United States v. Howard*, 621 F.3d 433, 450 (6th Cir. 2010). The district court's findings of fact are reviewed for clear error, while any related conclusions of law are reviewed *de novo*. *Id*. The ultimate question of whether the police had reasonable suspicion to perform a protective frisk is a mixed question of law and fact that we review *de novo*. *See United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005) (internal citations omitted). A factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Howard*, 621 F.3d at 450 (citing *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010)). This Court gives considerable deference to the district court's credibility determinations. *Hudson*, 405 F.3d at 431. A decision on a motion to suppress must be considered in the light most favorable to the party that prevailed in the court below. *Smith*, 594 F.3d at 535.

### II.     The *Terry* Frisk

Stennis does not challenge the initial traffic stop, Officer Roncska's request to exit the vehicle, or the search conducted of the automobile. Stennis' motion is limited to the pat down search of his person. He argues that he did not consent to this search and that the police otherwise lacked reasonable suspicion to support a protective frisk.

5

In *Terry v. Ohio*, the Supreme Court articulated a limited exception to the Fourth Amendment's warrant and probable cause requirements. *Terry* provides that an officer may briefly detain a person for investigative purposes if the officer has reasonable suspicion, supported by specific, articulable facts, that criminal activity may be afoot. 392 U.S. at 30–31; *United States v. Hensley*, 469 U.S. 221, 229 (1985). Reasonable suspicion "'requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard.'" *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (quoting *Smoak v. Hall*, 460 F.3d 768, 778–79 (6th Cir. 2006)). Due to the unique dangers traffic stops present for police officers, an officer may, in the course of conducting a legal stop, order a driver out of the vehicle and conduct a *Terry* frisk should the officer reasonably suspect the individual to be armed and dangerous. *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008). During the course of a protective pat down, if the officer detects nonthreatening contraband or weapons on the individual's person, the evidence is subject to immediate seizure. *Hudson,* 405 F.3d at 431 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)).

In assessing the stop, we judge the facts against an objective reasonableness standard to decide whether the information available to the officer at the time would warrant a person of reasonable caution to believe that a frisk was appropriate. *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986) (citing *Terry*, 392 U.S. at 21–22). Evaluating this issue involves a dual inquiry. *United States v. Perez*, 440 F.3d 363, 370–71 (6th Cir. 2006). First, we look to see whether the officer had justification to conduct the frisk. *Id.* Next, we examine whether the frisk was related in scope to the circumstances that justified it. *Id*. at 372. "The lawfulness of an investigatory stop

is judged by the totality of the circumstances to 'determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately.'" *Campbell*, 549 F.3d at 371 (quoting *Perez*, 440 F.3d at 371).

### A.    Reasonable Suspicion for the Frisk

In the present case, we agree with the district court that the protective frisk was supported by Officer Roncska's reasonable suspicion that Stennis was armed and dangerous. At the suppression hearings, Officer Roncska credibly explained that he believed a frisk was justified for two reasons—first, he observed a bulge in Stennis' groin area he believed was consistent with a weapon, and second, he possessed prior knowledge of Stennis based on an earlier, unrelated investigation. This encounter led Officer Roncska to believe that Stennis trafficked in drugs and carried weapons on his person.

The officer's perception of a bulge suspected to be a weapon provides reasonable suspicion that the individual may be armed and dangerous. *See, e.g., Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977); *United States v. Frazier*, 249 F. App'x 396, 403 (6th Cir. 2007). In addition, an officer may draw upon his experience as a law enforcement agent, including his knowledge of a particular suspect. *See Campbell*, 549 F.3d at 371; *United States v. Davis*, 430 F.3d 345, 354–55 (6th Cir. 2005).

In this case, Officer Roncska explained that he believed that Stennis might be armed and dangerous because he observed a rigid bulge in Stennis' pants and because he recognized Stennis from a previous encounter. Regardless of the minor inconsistencies in Officer Roncska's testimony,

an independent review of the videotape of the traffic stop confirms both of Officer Roncska's explanations.

First, the moment when Officer Roncska noticed the bulge is amply evident on the videotape. As Officer Roncska assisted Stennis into his wheelchair, the two men were engaged in a cordial conversation. However, after Stennis wheeled himself slightly away from the car and while Officer Roncska's eyes were focused on Stennis' waist, Officer Roncska's demeanor and tone abruptly changed. Officer Roncska brusquely asked Stennis if he had anything "in there" while indicating Stennis' waist area and quickly initiated the search. Coupled with the testimony Officer Roncska provided at the hearing, we find that the district court did not err in crediting Officer Roncska's testimony that he observed a suspicious bulge in Stennis' pants.

Moreover, the tape supports Officer Roncska's explanation that he recognized Stennis from the beginning of the traffic stop. When Officer Roncska first approached Stennis' vehicle, he engaged Stennis in a lengthy conversation about his address on Riverside Drive, an address that according to the testimony at both suppression hearings, Officer Roncska had visited in connection to investigating the domestic dispute between Aaron and Joyce.

Moreover, after frisking Stennis and placing him under arrest, Officer Roncska informed Stennis and Stennis' wife that he recognized them. Stennis' wife stated that she recognized Officer Roncska from the prior occasion when he visited their home. Officer Roncska told Stennis that he suspected Stennis would be carrying drugs and weapons based on tips from Stennis' "crackhead" clients. Accordingly, we agree with the district court's decision to credit Officer Roncska's basic account that he had prior knowledge of Stennis' criminal activities.

8

Stennis' defense hinges on inconsistencies revealed in Officer Roncska's testimony at the initial suppression hearing versus the events of the incident with Aaron and Joyce captured on the late filed DVD. Officer Roncska's testimony at the suppression hearing differed from the DVD in four main respects: (1) Officer Roncska testified that the incident with Aaron and Joyce occurred about a month before the traffic stop, when there was actually about a three-month gap; (2) Officer Roncska testified that Joyce identified her supplier as "Ernest," when the tape showed she stated her supplier's name was "Pete"; (3) Officer Roncska testified that Joyce told him her supplier was in a wheelchair, while the DVD shows that she stated the man was "crippled"; and (4) Officer Roncska testified that Joyce informed him specifically that the man carried guns in his pants, but the DVD shows that Joyce only stated that Pete was "armed" and that she was fearful of what Pete would do if he found out she had informed on him to the police.

As the district court correctly explained, these discrepancies are minor and inconsequential when compared to the facts pertinent to our reasonable suspicion analysis. Officer Roncska testified truthfully and consistently that he had, in recent months, investigated an incident which provided him with reason to believe that Stennis sold or used crack cocaine, that he carried a gun, and that he would threaten those who interfered with his criminal activities. Significantly, Stennis does not question that this prior interaction with Officer Roncska, in fact, occurred. Stennis also does not allege that Officer Roncska misidentified him during the traffic stop. Ultimately, despite the minor inconsistencies in Officer Roncska's testimony, the basic information possessed from this uncontested incident, coupled with the observation of a bulge in Stennis' pants, provided the officers with specific, articulable facts supporting reasonable suspicion to conduct the protective frisk.

**B.      Scope of the Frisk**

Having concluded that the basis for the *Terry* frisk was proper, we next examine "'whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.'" *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993) (quoting *Hardnett*, 804 F.2d at 356).  Because a *Terry* frisk is "for the limited purpose of ensuring the safety of the officer and others around him, the search must 'be confined in scope to an intrusion reasonably designed to discover'" weapons that could be used to assault the officer. *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007) (quoting *Terry*, 392 U.S. at 29).

The frisk conducted here was unremarkable in scope or duration.  Officer Roncska thoroughly, but not unreasonably, patted down Stennis' waist and pants.   The pat down of Stennis' waist did not indicate contraband, so Officer Roncska proceeded to frisk Stennis' groin and upper legs, which revealed hard bulges indicating contraband.  After palpating these bulges, Officer Roncska reached within Stennis' pants to retrieve the guns and drugs. Accordingly, the frisk remained within the proper scope laid out in *Terry*.

Stennis nevertheless argues that this search exceeded the scope permitted under *Terry* because Officer Roncska briefly pulled up on Stennis' shirt or jacket while performing the pat down of his waist.  He contends that, in doing so, Officer Roncska went beyond a frisk of Stennis' outer clothing. *Terry*, 392 U.S. at 7.  The government responds by pointing to several cases from our sister circuits in which those courts upheld frisks in which the individual's shirt was lifted.  *See United States v. Baker*, 78 F.3d 135, 138 (4th Cir. 1996); *United States v. Hill*, 545 F.2d 1191, 1192–93 (9th Cir.

1976) (*per curiam*). The government argues that these cases demonstrate that "the reasonableness of a protective search depends on the factual circumstances of each case" and that "a patdown frisk is but one example of how a reasonable protective search may be conducted." *Baker*, 78 F.3d at 138.

A police officer "making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect." *Adams v. Williams*, 407 U.S. 143, 146 (1972) (internal citation and quotation marks omitted). "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," a limited protective search may be conducted for the purpose of discovering any concealed weapons. *Id.* Regardless of the specific mechanics, Officer Roncska's actions did not go beyond this purpose. This Court has reviewed the videotape and agrees with the district court's factual finding that any pulling up of Stennis' shirt or jacket was a *de minimus* action attributable to patting down Stennis' waist while he was in a seated position. Officer Roncska made no attempt to perform a search outside *Terry's* boundaries while doing so. Officer Roncska did not reach up or grope beneath Stennis' outside clothing; he made no attempt to place his hands under Stennis' waistband; and he did not reach within Stennis' inner clothing or pockets. Accordingly, the protective frisk was reasonably related in scope to the situation at hand.

## III. Decision to Reopen the Suppression Hearing

Much of Stennis' complaint on appeal is that the magistrate judge abused his discretion in reopening the suppression hearing after the late filed DVD was discovered. Stennis contends that the magistrate judge promised the defense that the proceedings would not be reopened as a result of the late filed DVD and that any further examination requested by the defense would be strictly limited

to the DVD's contents. Stennis argues that, after the late filed DVD revealed facts in his favor, the magistrate judge prejudiced the defense when he reneged on his ruling and expanded the scope of the second proceeding in the government's favor. Stennis further argues that the magistrate judge's decision was substantially informed by an unsworn statement filed by the government along with the late filed DVD. Stennis contends that, despite succeeding on his motion to strike the statement, it was an impermissible and prejudicial *ex parte* communication.

Because the late filed DVD arguably benefits Stennis' case, Stennis obviously does not seek to exclude the late filed exhibit in its entirety, nor does he press a challenge to Officer Roncska's explanation for failing to bring the DVD to the first suppression hearing. Instead, Stennis urges that his motion to suppress should be reevaluated strictly in light of the discrepancies between Officer Roncska's testimony at the original suppression hearing and the late filed exhibit.

We review a trial court's ruling on a motion to reopen a suppression hearing for abuse of discretion. *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002). Reopening a suppression proceeding is permitted, but a court should be "extremely reluctant" to do so. *See United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1111 (2005) (quoting *United States v. Kithcark*, 218 F.3d 213, 219–20 (3d Cir. 2000)). The trial court must consider the totality of the circumstances involved, but the court should insist at least that the moving party provide a reasonable and adequate explanation for failing to put forth its evidence in the original proceeding. *See Kithcark*, 218 F.3d at 220 (citations omitted). The court's "primary focus" should center on whether the opposing party would suffer prejudice from reopening the proceeding. *Id*.

12

Stennis' complaints on this issue are unavailing because he cannot show how he was prejudiced by the reopened hearing. The magistrate judge had already arrived at an unfavorable decision and the proceeding was reopened to Stennis' benefit, in conjunction with his motion for reconsideration. Although Stennis believes that the magistrate judge expanded the scope of the second hearing beyond what was originally promised him, we disagree. The magistrate judge promised he would be allowed to cross-examine the officers about the contents of the late filed DVD, should the DVD provide exculpatory information. Essentially, this is what happened at the second hearing. Both parties were allowed to examine the police officers in light of the late filed exhibit and the other records discovered in the archives and used by the officers to refresh their recollections. The magistrate judge's procedure was fair under the circumstances, and we cannot find an abuse of discretion in his actions.

Finally, even if we were to limit our consideration in the manner Stennis requests, we would still uphold the district court's decision. Taking into account the discrepancies between Officer Roncska's testimony and the late filed exhibit, it remains clear and uncontested that Officer Roncska had encountered Stennis on a prior occasion. As explained above, that prior encounter provided Officer Roncska with a specific articulable basis for believing that Stennis might be armed and dangerous and carrying drugs. Coupled with noticing a bulge in Stennis' pants, a reasonable officer in Officer Roncska's position would be justified in performing a *Terry* frisk.

Finally, because the unsworn statement is such a source of consternation to the defense, we briefly address and reject the contention that this statement was an improper *ex parte* communication between the government and the magistrate judge. The allegedly unsworn statement is a one page

13

document, signed by Officers Roncska and Jinnett, which describes the events on the tape. The statement also contains one line that briefly alludes to a second prior encounter with Aaron and Joyce, in which the couple alleged that Stennis set their car on fire in retaliation for speaking to police.

An *ex parte* communication occurs when one party initiates direct or indirect communication on the substance of a pending case without the knowledge, presence, or consent of all parties involved in the matter. That did not occur in this case. The statement was filed, on open record, with the court. The defense had notice and opportunity to challenge its contents. Accordingly, our doctrine on *ex parte* communication does not squarely apply.

Stennis' substantive challenge is that the statement violated *Crawford v. Washington*'s rule against the admission of testimonial evidence in a criminal trial without the opportunity for cross-examination. *See Crawford*, 541 U.S. 36, 50–56 (2004). The means for addressing this challenge is through a motion to strike—an action which defense counsel successfully pursued. Under these circumstances, any prejudice was cured by granting the motion to strike and allowing the defense to cross-examine the officers.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order denying the motion to suppress.