**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0522n.06

Nos.  11-4301/11-3948

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 24, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Matthew J. Holland and | ) | NORTHERN DISTRICT OF OHIO |
| Richard Michael Persa, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before:     **MERRITT, McKEAGUE, and STRANCH, Circuit Judges.**

**MERRITT**, **Circuit Judge.**  Defendants Holland and Persa pleaded guilty to federal bank robbery charges and now appeal the district court's denial of their suppression motions.  The case raises two principal questions.  First, as to Holland, we must determine whether police entry into his apartment was consensual.  Subsidiary to this question, Holland asks us to reopen the suppression hearing.  Second, as to Persa, we must decide whether the police's protective sweep of a bedroom was valid.  We conclude that Holland is not entitled to reopen the record and that the district court did not err by finding that he consented to entry.  We also conclude that the protective sweep of the bedroom followed by the arrest of Persa was valid.

**I.  Background**

On a January morning in 2011, a lone robber attempted to hold up a Subway restaurant in Cleveland. Within fifteen minutes of arriving on the scene, police tracked the robber to a nearby apartment building based on information from a witness. Discussions with tenants and snowy footprints inside the building led the responding officers to believe that the robber lived in Apartment 2. When no one answered the door at Apartment 2, the officers left.

An investigation ensued in which police viewed a surveillance tape of the attempted robbery and learned from the building's landlord that Holland and Persa were the names of the tenants in Apartment 2. At around 9 p.m. the same day—about twelve hours after the initial visit to Apartment 2—a different set of policemen, Officers Borden and Shoulders, went to the apartment building without a warrant. Residents informed them that the tenants in Apartment 2 were home. The officers banged loudly on the door of Apartment 2 and threatened to return with a warrant if someone did not open up. Eventually Holland opened the door, and the officers stepped inside. Realizing that he was not the person they had seen on the tape, the officers asked Holland if he was alone in the apartment. He indicated that he was. The officers then heard rustling in a nearby bedroom. They entered the bedroom to find Persa attempting to hide under a hooded sweatshirt.

Questioning in the apartment revealed that Persa had committed a number of unsolved bank robberies in 2010. The officers placed Holland and Persa under arrest, and Holland signed a form consenting to a further search of the apartment. Additional questioning by the FBI the next day elicited each man's confession to committing the 2010 bank robberies. Presently a grand jury indicted Persa for five counts of bank robbery under 18 U.S.C. § 2113(a) and Holland for four counts of bank robbery under 18 U.S.C. § 2113(a).

The defendants moved to suppress their statements and evidence obtained in the search, arguing that their warrantless arrests violated the Fourth Amendment. After an evidentiary hearing, the district court denied the motions. Based on evidence obtained after entry into the bedroom, the district court found probable cause for the arrest of each man. Citing *United States v. Talley*, 275 F.3d 560 (6th Cir. 2001), it held that the officers were entitled to enter the bedroom by virtue of the "public-safety exception." Though the parties did not explicitly raise, and the court did not analyze, whether Holland consented to the officers' initial entry, the court stated that Holland "did not resist the entry of Sergeant Shoulders into the apartment." Mem. Op. at 2. After he acquired new counsel, Holland filed another suppression motion more thoroughly addressing consent and offering testimony by himself and his landlord that the police coerced entry into the apartment. The court denied the motion because Holland had explicitly refused to testify at the evidentiary hearing.

Each defendant entered a conditional guilty plea reserving his right to appeal the suppression issue. We exercise appellate jurisdiction under 28 U.S.C. § 1291.

## II.  Evidentiary Record

We will first address whether Holland is entitled to offer further evidence on the issue of consent or whether he is limited to the record he has on appeal. If permitted, Holland would testify that Officers Borden and Shoulders kicked in his door, entered with guns drawn, and immediately handcuffed him. Holland's landlord would testify that there was no damage to the apartment door before the officers' visit, but that damage appeared afterward. Def.'s Supp. Mot. to Suppress at 6.

We review a trial court's refusal to reopen a suppression hearing for abuse of discretion. *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1111

(2005). When considering a motion to reopen, the district court should account for the timeliness of the motion, the character of the proposed testimony, the effect of granting the motion, and, most importantly, whether the opposing party will be prejudiced by reopening the record. *United States v. Stennis*, 457 F. App'x 494, 502 (6th Cir. 2012); *United States v. White*, 455 F. App'x 647, 650–51 (6th Cir. 2012). However, before the court considers any of these elements, the moving party must offer a good reason for not previously presenting the proposed proof. *White*, 455 F. App'x at 650–51; *Carter*, 374 F.3d at 405–06. The movant must provide a "reasonable and adequate explanation for failing to put forth its evidence in the original proceeding." *Stennis*, 457 F. App'x at 502.

Holland cannot meet this standard. He argues that his acquisition of new defense counsel after the suppression hearing is a reasonable basis for reopening the record. Clearly, Holland's first attorney inexplicably failed to raise the consent issue at the suppression hearing.[1] But as in *Carter*, which likewise upheld a court's decision not to reopen a suppression hearing, Holland's renewed suppression motion, filed by his new attorney, did not argue that his previous attorney was incompetent. *See Carter*, 374 F.3d at 406. Though prior counsel's poor performance could in some circumstances satisfy the moving party's threshold showing, the district court should at least be presented with the argument when asked to reconsider an order denying suppression.

Holland says he only realized consent was at issue after "receiving the entire discovery, and reviewing the testimony of officers at the first suppression hearing." Holland Br. at 16. However,

---

[1] Counsel's failure to raise the consent issue at the suppression hearing may give rise to an ineffective assistance of counsel claim by Holland in subsequent proceedings, but we make no findings on that issue in this opinion.

he does not indicate what additional discovery he received. Moreover, if the officers indeed broke into the apartment with guns aimed, the issue of consent should have been clear to Holland at the suppression hearing. He provides no good reason why the landlord could not have testified to the door's condition—testimony that might have contradicted Officer Shoulders's unrefuted statement at the hearing that damage to the door was on its inside rather than its outside. Holland is in an especially poor position to argue with the district court's decision, because at the suppression hearing the district court made it clear that he had the opportunity to dispute the Government's testimony.[2] Despite this warning, he declined to offer any proof.

The district court did not abuse its discretion by refusing to reopen the suppression hearing. Holland's constitutional claim must be decided on the current record.

### III. Consent to Enter Apartment

Our constitutional law provides special protections against official entry into houses. It has long been established that police officers may not intrude into the privacy of a home unless they have a warrant, unless they have valid consent, or unless exigent circumstances justify entry. *See Steagald v. United States*, 451 U.S. 204, 211–12 (1981). The parties agree that Officers Shoulders and Borden had no warrant, and neither party raises the question of exigent circumstances. Holland and Persa both contend, however, that the officers had no consent to enter. They argue that this taint requires

---

[2] At the hearing, the district court directly addressed Persa and stated, "[Y]ou have every opportunity, if you wish, to put on testimony that you believe would be in conflict with the testimony that the Court has heard from the officers and from the FBI agent. It's your decision whether you testify or not. But what I don't want to hear [is] that somehow you didn't realize you had the opportunity to testify at your suppression hearing, because you have an absolute right to testify in your suppression hearings, and it's proper to consult with your lawyer as to what his advice is whether you testify . . . ." The court then addressed Holland and said that the same statements applied to him. After consulting with his lawyer, Holland declined to testify. Tr. of Proceedings Mot. to Suppress at 69–71.

suppression of subsequently discovered evidence under the fruit-of-the-poisonous-tree doctrine. *See Wong Sun v.United States*, 371 U.S. 471, 484–88 (1963).

## A. Standard of Review

Before assessing the merits of this claim, we must address two points about the standard of review. First, Holland states that the district court's finding of consent is to be considered *de novo*. Our cases have not always followed a consistent standard when reviewing a trial court's determination that a defendant gave voluntary consent to warrantless search or entry. Usually we have shown deference to the district court's conclusion, but at times we have declared a more probing standard. *Compare United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008) (stating that "we review the determination of the ultimate question of whether there was consent *de novo*" while affording "due weight" to the district court's factual inferences and credibility determinations), *with United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (stating that we review the question of voluntary consent for clear error). Holland does not provide any explanation of why his preferred standard is correct or of whether consent is a question of fact or a mixed question of fact and law. Without a convincing argument to the contrary, we must review the district court's consent determination for clear error. The leading case on the issue holds that the voluntariness of a defendant's consent under the Fourth Amendment is "a *question of fact* to be determined from the totality of all the circumstances," *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (emphasis added), and we do not reverse a district court's factual determinations unless clearly erroneous.[3]

_____

[3] In *Carter*, we cited *Schneckloth* in concluding that a district court's consent determination is reviewed for clear error. *See Carter*, 378 F.3d at 587. In *Moon*, we supported the *de novo* standard with citation to *United States v.*

-6-

Therefore, we will uphold the district court's finding of consent in this case unless we are "left with the definite and firm conviction that a mistake has been committed." *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006) (internal quotation marks omitted).

Second, the Government claims that, regardless of the normal standard of review, we have no jurisdiction over the issue of consent because the defendants waived it. In determining whether we have authority to consider an argument not raised below, we distinguish between "waiver" and "forfeiture." Forfeited issues may be reviewed under the plain error standard of Federal Rule of Criminal Procedure 52(b). Waived issues are beyond our power to review. *See United States v. Olano*, 507 U.S. 725, 732–34 (1993). Forfeiture is "the failure to make the timely assertion of a right." *Id.* at 733. Waiver is the "intentional relinquishment or abandonment of a known right." *Id.* (internal quotation marks omitted). In short, a basic failure to bring an issue to the district court's attention does not create waiver. Rather, waiver requires some affirmative act that shows a party has willfully declined to assert a right. *See United States v. Branham*, 97 F.3d 835, 842 (6th Cir. 1996) (stating that waiver requires a party to take "affirmative steps to voluntarily waive his claim").

When these standards are applied to this case, it is clear that Persa waived the argument that Holland gave no consent to enter. At the suppression hearing, Persa pursued the theory that the officers' initial entry was valid, but that the officers had no authority to search the rest of the apartment once inside. While making this argument, Persa's attorney stated, "Your Honor, I would

---

*Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006), a case reviewing the reasonableness of a *Terry* stop. *See Moon*, 513 F.3d at 536. However, the Supreme Court has explicitly held that determinations of reasonable suspicion and probable cause are to be reviewed *de novo* on appeal. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). It has not so held for determinations of consent under the Fourth Amendment. *See Schneckloth*, 412 U.S. at 227.

submit to the Court that Mr. Holland simply let them in the unit." Tr. of Proceedings Mot. to Suppress at 72. As this argument continued, the court reminded Persa's attorney of Shoulders's uncontroverted testimony that Holland "opened the door and invited [the officers] in." *Id.* at 73. Persa's attorney responded with a simple "yes." *Id.* From this point, Persa's attorney did not raise consent again, but instead argued that there were no exigent circumstances to support a warrantless entry. *Id.* at 74. These arguments and acknowledgments are enough to establish the voluntary relinquishment needed to create waiver. Though Persa unequivocally asserted a violation of his Fourth Amendment right, he explicitly disavowed the theory that the violation stemmed from entry into the apartment without consent. We are powerless to consider Persa's Fourth Amendment argument on appeal to the extent that it is rooted in the initial entry.

We find no such voluntary relinquishment by Holland. The Government asserts that Holland waived the consent argument by failing to explicitly raise it after hearing Persa's concessions on the officers' initial entry. This is not the sort of affirmative disavowal required for waiver. Permitting waiver by virtue of a co-defendant's concession alone would violate the principle that waiver requires an individual's affirmative decision to forego an argument. The Government overreaches by arguing that waiver will be found when "a defendant fails to object to a district court's factual finding about lack of evidence to support a position that the defendant chose not to advance, despite having ample opportunity to do so at the suppression hearing." Resp. Br. at 20. These words state a version of forfeiture, not waiver.

The more pertinent question is whether Holland even forfeited his consent argument. As the Government points out in attempting to establish waiver, Holland did not argue in his suppression

motion or at the suppression hearing that the officers lacked consent to enter. However, neither Holland's refusal to testify nor his first attorney's failure to articulate the consent theory with specificity establishes forfeiture. That is because review of Holland's filings and arguments shows that he did not commit a "failure to make the timely assertion of a right." *Olano*, 507 U.S. at 733.

The theory that Holland's first attorney pursued was that the police violated Holland's Fourth Amendment right by arresting him in his apartment without a warrant. Holland argued in his suppression motion that he was the victim of a "warrantless illegal arrest" and stated that "the arrest of an individual inside their [sic] home without a warrant is per se unreasonable even with probably [sic] cause absent exigent circumstances." Mot. to Suppress at 4–5. He cited *Payton v. New York*, 445 U.S. 573 (1980), the key precedent on warrantless house arrest, for the argument that "[a]bsent exigent circumstances, [a house's] threshold may not reasonably be crossed without a warrant." *Id.* at 5 (quoting *Payton*, 445 U.S. at 590). His attorney further argued at the suppression hearing: "They had plenty of time to get a warrant to go into the place, and I think that was something they absolutely had to do, Your Honor. And in the same aspect after they went into the apartment it was through the illegal entry, Your Honor." Tr. of Proceedings Mot. to Suppress at 75.

When faced with the showing that Holland's arrest was the product of warrantless entry, it was the Government's burden to prove that some exception to the Fourth Amendment warrant requirement justified the officers' conduct. *See, e.g.*, *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996) ("In the absence of a warrant authorizing the officers' entry into Defendant's home, the Government must overcome the presumption that this entry was unreasonable."). The Government apparently could not show exigent circumstances in this case, so it attempted to meet

its burden by proving consent. Holland would have been better served to rebut the Government's case at the suppression hearing, but the failure to do so did not forfeit Holland's ability to argue on appeal that the Government did not meet its burden. To avoid forfeiture of his Fourth Amendment right against warrantless entry, Holland needed only to raise it in a timely fashion. He did.

In sum, Persa waived his warrantless-entry claim by expressly conceding it at the suppression hearing. Holland neither waived nor forfeited his warrantless-entry claim. We will review for clear error the district court's finding that Holland permitted the officers to enter the apartment, keeping in mind that we interpret the evidence in the light most favorable to the government when reviewing a denial of a motion to suppress. *Carter*, 378 F.3d at 587.

### B. Merits of Holland's Claim

The police typically must have a warrant to enter a defendant's home. *Payton*, 445 U.S. at 589–90. However, warrantless entry is not per se unreasonable if the defendant consents to it. The government bears the burden of proving through "clear and positive testimony" that consent to enter was given voluntarily. *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011) (internal quotation marks omitted). The government's showing must satisfy the preponderance standard. *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999). Consent is voluntary if it is "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion." *Moon*, 513 F.3d at 537 (internal quotation marks omitted). The government is required to show something more than "mere acquiescence" on the part of the defendant. *United States v. Canipe*, 569 F.3d 597, 603 (6th Cir. 2009). The inquiry is not a subjective one; it does not hinge on whether the defendant knew of his right to refuse entry, or even upon whether the defendant actually believed himself to

be consenting. Rather, the test is objective. We must ask whether the totality of the circumstances establishes that the defendant permitted the police inside his home. *See Schneckloth*, 412 U.S. at 227. Though the defendant's subjective understanding of his constitutional right is one factor in the analysis, we will also consider the defendant's personal characteristics, the length and nature of the police-citizen interaction, and the use of police coercion, subtle or otherwise. *Id.*; *United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011).

Holland believes the Government failed to show consent under these standards. First, he argues that the Government proved only that he did not object to entry, not that he affirmatively consented to it. In support, he points out that the officers did not ask for permission and claims that such a request is needed to find consent. He suggests that his youth and drug addiction precluded voluntary consent. He asserts that evidence of banging on and damage to the door shows that entry was forced.

Many of Holland's suggestions are not supported by the record, and those that are do not lead us to find that the district court clearly erred. Because Holland offered no proof, the district court based its factual finding on Officer Shoulders's testimony. Shoulders testified, "[Holland] let us in. We did not force our way into the apartment." Tr. of Proceedings Mot. to Suppress at 26. Later, Persa's lawyer asked, "You said that Mr. Holland didn't object to your proceeding into the apartment?" *Id.* at 40. Shoulders replied, "That is correct," and shortly thereafter said, "He let us in the apartment." *Id.* at 40–41. These statements provided clear and positive testimony that Holland consented to entry. Given that this was the only proof from which the district court could determine consent, the evidence preponderated in the Government's favor.

Though Shoulders's testimony did not establish that the officers asked permission to breach the threshold, we do not follow a per se rule that police must explicitly ask to enter. Indeed, the totality-of-the-circumstances standard militates against such a blanket rule. *See United States v. Montgomery*, 621 F.3d 568, 572 (6th Cir. 2010). The government will typically have a harder case if the facts show that officers did not ask permission. Here, however, the evidence does not prove one way or the other whether the officers asked. In any event, Shoulders's uncontroverted testimony shows that Holland permitted entry into the apartment. In a similar vein, Holland's youth and the officers' banging on the door cannot overcome this testimony. And Holland's arguments about his drug use and the damaged door are meritless. Shoulders testified that Holland did not appear to be on drugs. Tr. of Proceedings Mot. to Suppress at 49. He also testified that the damage to the door was on the inside rather the outside. *Id.* at 39–40. Without contrary evidence, it was proper for the district court to accept his version of the facts.

Finally, Holland urges us to consider that the officers threatened to get a warrant if Holland did not open the door. The Government counters by pointing to *United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998). In *Salvo*, the defendant permitted a warrantless search of his dorm room after an agent threatened to return with a warrant. We discussed precedent holding that an agent's statement that he will get a warrant does not necessarily invalidate consent. *Id.* at 954. We noted that the agent in Salvo's case testified that he had sufficient information to get a warrant. *Id.* We then found that Salvo granted voluntary consent because there was "no evidence on the record that the agents' statements that they would secure a search warrant if Salvo did not consent were baseless or a pretext to coerce Salvo." *Id.* at 954–55.

Because we do not afford a special legal effect to the officers' threat to obtain a warrant, it is simply one of the factors we consider in determining whether Holland consented to the search. And in the face of uncontroverted evidence that Holland allowed the officers to enter, the threat cannot tilt the scales in Holland's favor, even when considered with the officers' banging and the lack of evidence showing that the officers asked permission. The district court did not clearly err in finding that Holland gave the officers consent to enter without a warrant. The entry therefore provides no basis to suppress Holland's statements and the physical evidence found in his apartment. Because the consent issue exhausts his constitutional claims, his conviction is affirmed.

## IV. Protective Sweep

Persa's claim is based on the theory that the officers violated the Fourth Amendment when they exceeded the scope of Holland's consent and entered the bedroom without a warrant. The Government contends that entry into the bedroom was a valid protective sweep.

Noticing immediately upon entering the apartment that Holland did not match the description of the Subway robber, Officer Shoulders asked if there was anyone else in the apartment. Holland claimed he was alone. Shoulders asked who lived with Holland and Holland replied that he lived alone. At that point, the officers had already been told that two men lived in the apartment and were home. While Holland was claiming he lived alone, Shoulders heard noises consistent with movement coming from an adjacent bedroom to the right of the apartment door. Aware of Holland's attempted deception and with knowledge that the Subway robber was reportedly armed, Shoulders entered the bedroom to conduct a limited protective sweep for officer safety. He saw a male, later identified as Persa, lying face down beside the bed with a hoodie over his head.

The issue before us is whether these circumstances authorized a protective sweep of the bedroom.  In *Maryland v. Buie*, 494 U.S. 325 (1990), the Supreme Court considered "what level of justification is required by the Fourth and Fourteenth Amendments before police officers, while effecting the arrest of a suspect in his home pursuant to an arrest warrant, may conduct a warrantless protective sweep of all or part of the premises." *Id.* at 327.  A "'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Id*.  The police may conduct a protective sweep if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334.

In *United States v. Taylor*, 248 F.3d 506 (6th Cir. 2001), we joined the majority of circuits in holding that the *Buie* protective sweep doctrine extends to situations other than execution of arrest warrants.  In *Taylor*, officers entered an apartment with valid consent.  Upon seeing a marijuana stem in plain view, the officers determined they had probable cause to obtain a search warrant and conducted a protective sweep to secure the apartment.  Looking at the "totality of the circumstances," we found the protective sweep justified because the officers "had probable cause to believe there was contraband in that apartment and to believe there may have been others hiding in the apartment." *Id*. at 514.

Applying *Taylor* here, we conclude that the police were lawfully on the premises through Holland's consent to enter the apartment and that under the totality of the circumstances the officers had probable cause to believe the Subway robber was hiding in the apartment.  At the suppression

hearing, Shoulders articulated specific facts from which a reasonably prudent officer would have believed that the bedroom harbored an individual who might pose a danger to the officers on the scene. After opening the door to allow the officers inside, Holland told the police that he was alone in the apartment. The officers had previously been told that two men lived there and were then present in the apartment. And, despite Holland's assurance, the officers heard noises emanating from the nearby bedroom. Concerned that another person might be present who could harm them, the officers lawfully entered the bedroom where they located Persa. The development of probable cause to believe that the Subway robber was present in the apartment, in conjunction with legal entry into the apartment and the articulation of specific facts which, taken together with the rational inferences from those facts, warranted a reasonably prudent officer in believing that the area to be swept harbored an individual posing a danger to those on the arrest scene, is sufficient basis to authorize the police decision to conduct a limited protective sweep of Persa's bedroom for the purpose of ensuring officer safety.

Accordingly, the judgment of the district court is affirmed.

**McKEAGUE, Circuit Judge, concurring.** I concur in the result and analysis of the majority opinion. I write separately simply to disavow the implied suggestion, in Part IV, that the officers needed "probable cause" to justify their protective sweep of the apartment.

In *United States v. Taylor*, 248 F.3d 506, 514 (6th Cir. 2001), the majority correctly observes, we upheld a protective sweep of an apartment where officers had entered by consent, observed contraband in plain view, and wanted to secure the area while a search warrant was obtained. The *Taylor* opinion mentions probable cause to search because that is what justified the officers' staying in the suspect's apartment while a search warrant was obtained. It was because the officers were justified in remaining in the apartment *and* "had articulable facts to support their belief that there were other persons . . . in the apartment who posed a threat to their safety," that the protective sweep was justified. *Id.* *Taylor*'s reference to probable cause was thus incidental to the question of the lawfulness of the officers' presence.

In applying the teaching of *Maryland v. Buie*, 494 U.S. 325 (1990), most of our sister circuits have likewise concluded that a protective sweep is permissible as long as the officers were lawfully present (whether authorized by arrest warrant, exigent circumstances or consent) and had reasonable, articulable suspicion of danger. *See e.g.*, *United States v. Martins*, 413 F.3d 139, 149-50 (1st Cir. 2005); *Miller*, 430 F.3d 93, 99 (2d Cir. 2005); *United States v. Laudermilt*, 677 F.3d 605, 610 (4th Cir. 2012); *United States v. Scroggins*, 599 F.3d 433, 440-41 (5th Cir. 2010); *Leaf v. Shelnutt*, 400 F.3d 1070, 1086-87 (7th Cir. 2005); *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1006-07 (8th Cir. 2010); *United States v. Caraballo*, 595 F.3d 1214, 1224 (11th Cir. 2010); *but cf. United States*

*v. Torres-Castro*, 470 F.3d 992, 996-97 (10th Cir. 2006) (construing *Buie* as permitting protective sweep only incident to lawful arrest).

According to *Taylor*, then, and authorities from most of our sister circuits, determining whether a protective sweep was justified presents a twofold inquiry: Were the officers lawfully present and did they have reasonable, articulable suspicion of danger? The majority opinion well explains that the officers in this case were lawfully present on the premises, by virtue of Holland's consent, and had articulable suspicion that an individual was present who posed danger. This is sufficient to justify the protective sweep, irrespective of whether the officers also had "probable cause."