NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0521n.06

No. 24-1797

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED** Nov 05, 2025 KELLY L. STEPHENS, Clerk |

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

KEVIN SMITH,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: WHITE, STRANCH, and MURPHY, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Kevin Smith filed a motion to suppress evidence obtained from a search during a traffic stop of his person and vehicle. The district court denied Smith's motion, ruling that the officers had a valid search and arrest warrant, and lawfully stopped, arrested, and searched Smith's person, Smith's vehicle, and a house at which he was seen repeatedly. Smith now challenges whether there was probable cause to search the residence. For the reasons set forth below, we affirm the judgment of the district court.

## I. BACKGROUND

### A. Factual Background

On May 10, 2023, a magistrate judge authorized a search warrant for Smith's person, a black F-150 truck, and a residence on Walnut Street. The affidavit supporting the search warrant stated that the affiant officer received information from a cooperating individual (CI) about a fentanyl dealer named "Kevin." The CI described "Kevin" as a black male, approximately 40-50 years of age, who resided in the city of Westland. The affiant officer then arranged a controlled

buy between the CI and "Kevin" in late April 2023. While observing this controlled buy, officers saw the CI get into a black Ford F-150 being driven by a Black male. A short time later, the CI exited the Ford F-150 and returned to his own vehicle. Officers "eventually followed" the Ford F-150 to the Walnut residence, where the driver of the truck was seen walking from the truck to the residence's front door. R. 23-Ex. 1, Search Warrant, PageID 108. After the buy, the CI confirmed that the individual from whom he had purchased fentanyl was the individual he had previously identified as "Kevin."

The affiant officer ran a license plate search for the Ford F-150 observed during the controlled buy and found it to be registered to an Antwanda Roland. The officer then searched for additional vehicles registered to Roland and found a Dodge Ram 1500. After conducting a search for tickets issued to drivers of the Dodge Ram, the affiant found a citation issued to a Kevin Smith. A further search of the name Kevin Smith revealed a driver's license, which was then shown to the CI who confirmed that the person in the license photo was the same person he had purchased fentanyl from during the controlled buy.

In early May 2023, the affiant officer set up another controlled buy between the CI and the now-identified Smith. This time, officers also surveilled the Walnut residence and watched Smith exit the front door and enter the same Ford F-150 truck as was used in the first controlled buy, which was parked in the driveway. They followed the truck to the pre-arranged meet location and watched the CI get inside the truck. After the CI exited the truck, officers followed it from the meet spot "eventually" back to the Walnut residence, where Smith again exited the truck and entered the residence. The CI and affiant met at a prearranged location after this buy, and the CI turned over a quantity of fentanyl. The affidavit concluded that the Walnut residence was Smith's

residence, and that a search of it would reveal listed items to be seized as well as the pre-recorded buy funds that the officer had given to the CI.

On May 11, the day after the warrant was issued and the second controlled buy took place, law enforcement executed a search on Smith's person and his truck during a traffic stop. During this search, officers found crack-cocaine, fentanyl, a digital scale, and a firearm in the center console of the truck. That same day, the officers also searched the Walnut residence where they recovered: methamphetamine; fentanyl; cocaine; crack cocaine; other drug processing and packaging items; and cash including the pre-recorded money from the CI. The search also recovered two loaded firearms.

### B.    Procedural History

On June 13, 2023, Smith was indicted on four counts of possession with intent to distribute controlled substances and two counts of illegal firearm possession. He moved to suppress all evidence recovered during the traffic stop. The Government responded to this motion on October 6, 2023. The district court then held a hearing and denied the motion from the bench on October 23. A formal order was docketed the same day. Trial began on November 27, and the jury found Smith guilty on all six counts. On September 10, 2024, the district court sentenced Smith. He timely appealed the district court's denial of his motion to suppress.

## II.    ANALYSIS

In reviewing a district court's denial of a motion to suppress, we review the court's findings of fact for clear error and its conclusion of law de novo. *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006).

The Government first argues that Smith waived his suppression challenge to the search of the Walnut residence. "We have described the doctrines of waiver, invited error, and forfeiture as

lying on a continuum." *United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023). Forfeiture—"the failure to make the timely assertion of a right"—is on one end, while waiver—the "intentional relinquishment or abandonment of a known right"—is on the other. *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (citation modified). This distinction matters because when an argument is waived, we will not review it. *See id.* In contrast, if a claim is forfeited, we review it for plain error. *See id.*

In addressing whether an argument has been waived, as opposed to merely forfeited, we have explained that "[w]ith each additional indication that a party intentionally abandoned an argument rather than merely overlooked it, the party's conduct travels further along [the] continuum toward waiver." *Walker v. United States*, 134 F.4th 437, 441 (6th Cir. 2025). A party's conduct slides toward waiver where there is evidence of a "deliberate decision to actively abandon an issue." *Id.* at 440 (quoting *Wood v. Milyard*, 566 U.S. 463, 473 (2012), and *United States v. Montgomery*, 998 F.3d 693, 697 (6th Cir. 2021)) (citation modified). And in the absence of an explicit statement, we look to intent—whether the party understands that they are implicitly abandoning an argument. *See id.* at 446. "When indications of intent are absent, or when there are affirmative reasons to believe that a party did not intend to abandon an argument, the party's conduct slides the other way, toward forfeiture." *Id.* at 441.

Looking first to the motion to suppress, Smith appears to have challenged only the search of his person and vehicle as he argued that "[a]ll evidence allegedly seized during from [sic] the illegal detention and arrest of Defendant Smith, during [the traffic stop of his Ford F-150], should be suppressed as the fruit of an illegal arrest." R. 20, Mot. to Supp., PageID 61. Indeed, he did not specifically argue that the search warrant or the affidavit were invalid as to the Walnut residence; rather, Smith's motion centered on the traffic stop and the evidence seized during the

stop. The motion only references the fact of the search of the Walnut residence and that a key was obtained during the traffic stop search that failed to open the Walnut residence door.

During the hearing on the motion to suppress, the district court offered Smith's counsel the opportunity to call witnesses, but his counsel declined to do so. Thus, the district court relied on the information in the search warrant and its affidavit. During the hearing, Smith's counsel stated "the issue is very narrow. We believe that there was no probable cause to stop and detain Kevin Smith before the police go and execute a search warrant on what they said was Mr. Smith's abode or address." R. 56, Hearing Tr., PageID 416. Smith's counsel then changed his argument and asked the Court to "suppress the search warrant as executed against Mr. Smith." R. 56, PageID 429. The district court in response asked for clarification of counsel's argument, to which she responded that the search of the house was not at issue:

> MS. DIALLO: Okay. Once again, Judge, we just have to rely upon the affidavit and what we are challenging within that affidavit. So for those reasons we would ask that you suppress the search warrant as executed against Mr. Smith, yes, on the --
> THE COURT: Mr. Smith, the Ford, and the house.
> MS. DIALLO: No, we're not saying the house.
> THE COURT: Okay. Mr. Smith and the Ford.
> MS. DIALLO: That's right, Judge.
> THE COURT: Thank you.
> MS. DIALLO: Thank you so much.

*Id.*

Relying on these representations, the district court ultimately ruled that the search warrant was valid as to Smith's person, the Ford F-150, and the Walnut residence. On appeal, Smith argues for the first time that there was no probable cause to search the Walnut residence because it is not his residence, and it is not sufficient that Smith was "eventually followed" back to the Walnut

house after the controlled buys. The Government contends that these facts and Smith's counsel's failure to object to the search warrant as executed on the Walnut residence constitute a waiver, rendering the issue unreviewable.

Our precedent recognizes that "party statements directing a court away from an issue the party clearly understands are hallmarks of waiver." *Walker*, 134 F.4th at 442. For example, in *United States v. Holland*, 522 F. App'x 265 (6th Cir. 2013), regarding the issue of consent under the Fourth Amendment, defense counsel represented to the district court that the defendant "simply let them in the unit" during a search. *Id.* at 272. The district court there went out of its way to remind counsel of the uncontroverted testimony that the defendant "opened the door and invited [the officers] in," to which counsel responded with a simple "yes" and never raised the consent argument again. *Id.* When consent arguments were then reraised on appeal, we held such "arguments and acknowledgments" below were voluntarily relinquishments and thus waiver. *Id.* The same is true of defense counsel's statements here. It is uncontroverted that the district court here specifically sought to clarify what in this affidavit was being challenged and defense counsel represented to the court that arguments concerning the execution of the warrant on the house were not being raised. Based on counsel's representations, no factual development of this issue was made, and any review of the issue now would require us to make such impermissible fact determinations. These are the hallmarks of waiver.

In *United States v. Clariot*, we held that forfeiture does not apply "where the district court nevertheless addressed the merits of the issue." 655 F.3d 550, 556 (6th Cir. 2011) (quoting *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009)). The critical point of that quotation is that we referred specifically to the district court's resolution of the merits—not merely that the issue was mentioned or discussed. Such distinction is particularly

significant here. Smith points to the district court's decision and argues that the court ruled on the issues raised in this appeal. But in the sections of the hearing transcript that Smith cites (1) the Government is giving opening remarks detailing the facts of the affidavit before Smith's counsel has told the district court judge that the house was not at issue, and (2) the judge makes a single sentence conclusion that the agents had probable cause to search the house because the valid warrant defeated Smith's argument that "he was seized without reasonable suspicion or probable cause." R. 56, PageID 434. The district court even stated "[a]nd tellingly, defendant has not raised an issue that would undermine the affidavit connected with the search warrant." *Id.* Smith's statement that "there was extensive discussion at the motion hearing of the fact specific issues related to probable cause to search" the Walnut residence is unsupported by a record citation— because no such discussion in the record exists.

Although the district court found probable cause to search the house, it never addressed the specific merits of the arguments that Smith now raises on appeal. Rather, the court's ruling concerning the house focused on the validity of the warrant and included a thorough analysis of the arguments presented by Smith's counsel. In other words, its conclusion that probable cause existed could be read to have rested on Smith's disavowal of the argument alone.

Looking to cases where we found there to be forfeiture, rather than waiver, further supports the conclusion that this case falls on the waiver end of the continuum. In *United States v. Noble*, 762 F.3d 509, 526–28 (6th Cir. 2014), we held the government's failure to make a lack-of-standing argument to challenge the underlying search in the district court constituted forfeiture. That situation was not waiver because merely failing to raise an argument does not clearly demonstrate an "affirmative act that shows a party has willfully declined to assert a right." *Holland*, 522 F. App'x at 272. Here, Smith's counsel's colloquy directing the district court away from the issue

and denying any challenge to the house search is not the same as failing to raise an argument. Holding there was a waiver here also aligns with *United States v. Clark*, 24 F.4th 565 (6th Cir. 2022). In that case, as here, the issue on appeal was not asserted before the district court, nor was it raised in the pretrial motion or objected to when admitted at trial. *See id.* at 577. To the contrary, defense counsel affirmatively disavowed the issue in the district court. *See id.* Such "plain, explicit concession on the record addressing the precise issue later raised on appeal," is an affirmative waiver of such issues going forward. *Id.* (quoting *United States v. Mabee*, 765 F.3d 666, 673 (6th Cir. 2014); *United States v. Abdi*, 827 F. App'x 499, 506 (6th Cir. 2020)). Under governing precedent, we must hold there was a waiver of Smith's arguments concerning the search of the Walnut residence, and we thus will not review them on appeal.[1]

### III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's conviction and sentence.

---

[1] As we will not be vacating the district court's conviction and sentence, there is no need to review Smith's arguments regarding the dismissal of the specific counts. Such arguments are predicated on our review of the search of the Walnut residence, which we hold to be a waived issue.