NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0249n.06

No. 08-4730

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Apr 22, 2010**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                        )
                                                 )
    Plaintiff-Appellee,                          )
                                                 )
v.                                               )  ON APPEAL FROM THE UNITED
                                                 )  STATES DISTRICT COURT FOR THE
ANTHONY L. HALL, JR.,                            )  NORTHERN DISTRICT OF OHIO
                                                 )
    Defendant-Appellant.                         )


Before:  GUY, COLE and SUTTON, Circuit Judges.


SUTTON, Circuit Judge.  Anthony Hall claims that the district court improperly accepted

his guilty plea and misapplied the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), in

sentencing him.  Because Hall voluntarily pled guilty and because he waived his sentencing claim,

we affirm.


I.


On January 12, 2008, police officers from the Cuyahoga Metropolitan Housing Authority

arrived at Hall's home to investigate an anonymous tip that Hall had a firearm there.  PSR ¶ 6; R.11

at 3–4.  A search of the apartment revealed a .357 magnum under the sofa, which Hall, a felon,

admitted was his.  On February 13, 2008, a federal grand jury indicted Hall for being a felon in

possession of a firearm. *See* 18 U.S.C. § 922(g)(1). The district court accepted Hall's unconditional guilty plea to the indictment.

At Hall's sentencing hearing, the district court determined that Hall's criminal history subjected him to ACCA, requiring a 15-year mandatory minimum sentence, *see* 18 U.S.C. § 924(e)(1). The court asked Hall if he objected to this conclusion; he did not. After considering the sentencing guidelines and the § 3553(a) factors, the court sentenced Hall to 15 years. Hall timely appeals, challenging the validity of his guilty plea and his sentence.

## II.

Hall claims that the district court violated Rule 11(b)(2) of the Federal Rules of Criminal Procedure because it failed to ensure that his guilty plea was "voluntary and did not result from force, threats, or promises." Hall did not raise this objection during his plea colloquy with the district court, requiring us to review the district court's actions for plain error. *See* Fed. R. Crim. P. 51(b), 52(b); *United States v. Vonn*, 535 U.S. 55, 59 (2002). A district court commits plain error when it makes an "obvious or clear" error that "affected [the] defendant's substantial rights" and that "affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006). Hall bears the burden of meeting this standard. *See United States v. Barnett*, 398 F.3d 516, 535 (6th Cir. 2005).

Because guilty pleas amount not only to an admission of culpable conduct but also to a waiver of constitutional rights, the government may not obtain "a plea by actual or threatened

physical harm or by mental coercion overbearing the will of the defendant." *Brady v. United States*, 397 U.S. 742, 748–50 (1970). To this end, a district court "must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2).

In this instance, the district court touched all of the relevant bases in addressing Hall in court about the nature and circumstances of his plea. It addressed Hall's competence, his representation, the elements of the charged crime, the sentencing consequences, including the 15-year statutory minimum sentence, the factual basis for the plea, and his constitutional rights. So far so good, as all of Hall's answers indicated that he understood what he was doing.

A complication arose, however, at the end of the hearing, when Hall and the court had the following exchange:

> THE COURT: All right. Is your plea voluntary?
> THE DEFENDANT: No, sir.
> THE COURT: It's not voluntary?
> THE DEFENDANT: No.

R.44 at 26–27. Had the Rule 11 proceeding ended at this point, the court could not have accepted Hall's plea, in view of Hall's answer. But the court continued, asking Hall what he meant.

> THE COURT: What's involuntary about it?
> THE DEFENDANT: I don't want to be doing this.

> THE COURT:  I understand that.  Has anyone promised you anything in return for this guilty plea?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Is anyone forcing you into entering this plea?
>
> THE DEFENDANT:  The United States Government.
>
> THE COURT:  Or are you doing it on [your] own?
>
> THE DEFENDANT:  Yes, I'm doing it on my own, sir.
>
> THE COURT:  I know it's no fun.  All right.  The court, having fully advised the defendant of the effect of his plea, finds the plea to have been freely and voluntarily made with full knowledge of the consequences.  Therefore, the court will accept the plea and adjudge the defendant guilty.

R.44 at 26–27.

The district court did not plainly err in accepting the plea.  As the full context of this exchange shows, and as the prior exchanges with the judge confirm, Hall knew what he was doing and voluntarily did it.  Only a single-minded focus on the initial exchange suggests otherwise, but context in this area (and so many others) is everything.  "The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 789.  As the follow-up questions and answers show, Hall simply did not like the choice he faced: a guilty plea accompanied by a long sentence or a trial accompanied by the risk of a longer sentence.  Hall's answer to the court's later questions show that no one forced him to enter the plea and that he was not promised anything for entering the plea.  And while, quite understandably, he might not have been pleased about entering the plea, he acknowledged that he was making the decision to do

so on his own. *See* R.44 at 26–27 ("THE COURT: Or are you doing it on [your] own? THE DEFENDANT: Yes, I'm doing it on my own, sir.").

Supporting this conclusion is the reality that Hall has never offered a theory or explanation for why he did not act voluntarily in signing the plea agreement. He does not claim that the government coerced him into pleading guilty or otherwise acted improperly in the plea negotiations. He does not claim that the court badgered him into signing the plea. And he does not claim that his attorney gave him bad advice or otherwise misled him in entering the plea. His theory of coercion instead ultimately rests on the reality that *his conduct* forced him to a difficult choice between two unattractive options: going to trial or pleading guilty. That, however, is not a cognizable theory of coercion. An involuntary plea is not the same thing as a plea that "I don't want to be doing this," when neither the government nor the court nor his attorney has improperly forced the defendant's hand and when the defendant's reluctance stems from the difficult choice before him, and nothing more. A guilty plea is not compelled, as the Supreme Court has explained, "whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady*, 397 U.S. at 751.

Still, Hall reminds us, a district court must be reversed when it fails "meticulously" to follow Rule 11. *United States v. McCreary-Redd*, 475 F.3d 718, 721 (6th Cir. 2007). Instead of taking him at his word that he was signing the plea agreement "on [his] own," R.44 at 26, he says that the court should have initiated a "deeper probe" into his intentions, Hall's Br. at 17. No doubt, one more

question and answer—further confirming the voluntariness of the plea—would have helped matters. But it was not plain error to stop when the court did. There was a prelude before Hall's initial suggestion and an epilogue after it, and both of them sufficiently established that Hall's plea was voluntary in a constitutional and Rule 11 sense.

Hall persists that *Mack v. United States*, 635 F.2d 20 (1st Cir. 1980), which required a district court to allow a defendant to plead anew, requires a different outcome. But the analogy does not hold. When asked during a plea colloquy to comment on a psychiatric report, Mack stated that he had been "beaten" and "drugged" and that he was "being pressured into making the plea" against his "own free will." *Id.* at 23. The court cut him off and reiterated that it wanted to hear only comments to the report. Later in the plea hearing, when it came time to discuss voluntariness, the court simply asked, "Is your plea entirely free and voluntary?" and the defendant answered "Yes, it is." *Id.* at 24. Unlike the district court in *Mack*, the district court here asked follow-up questions in response to the claimed coercion; the court asked Hall an open-ended question and gave him an opportunity to elaborate on his claims; and Hall made no specific allegations of coercion, even when given a chance to do so.

III.

Hall also challenges the district court's ACCA enhancement. But Hall waived this claim at his sentencing hearing by agreeing that the enhancement applies, and at any rate he cannot overcome his conceded forfeiture of this argument.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks omitted). Although we may review *forfeited* claims, which like Hall's Rule 11 claim were raised for the first time on appeal, for plain error, *see United States v. Stines*, 313 F.3d 912, 917–18 (6th Cir. 2002), we may not review waived claims at all, *see United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002). A defendant waives a known claim by "agree[ing] in open court with a judge's proposed course of conduct." *Id.*; *see also Lanham v. United States*, 4 F. App'x 313, 315 (6th Cir. 2001) (defendant waives his claim by failing to object, when asked, to ACCA designation in Pre-Sentence Report).

The record confirms that Hall knew about the court's proposed ACCA sentencing enhancement, yet he intentionally waived that objection. At Hall's plea hearing, his counsel "retain[ed] th[e] right" to "dispute" that Hall "qualified as an armed career criminal" when the time came at sentencing. R.44 at 11. When the time for sentencing came, however, Hall apparently had changed his mind. Hall's counsel argued that the circumstances surrounding Hall's arrest (he allegedly acquired the handgun to protect himself from two violent neighbors) should have led the U.S. Attorney to exercise more prosecutorial discretion. In making this argument, counsel conceded ACCA's applicability to Hall: "I recognize my client has the criminal history that he does, and I certainly understand that he's a, pursuant to statute, an armed career criminal." R.45 at 5. He also admitted that Hall was subject to a "15[-]year[] minimum mandatory" sentence. *Id.* at 6. Hall cannot now argue that the district court erred in applying ACCA when he expressly conceded the point at sentencing. *See Aparco-Centeno*, 280 F.3d at 1088.

Hall resists this conclusion, claiming that he could waive the argument only by objecting to the ACCA determination and then making an "actual, affirmative withdrawal" of that objection. Hall's Reply Br. at 14. His counsel merely "failed to renew" his ACCA objection when given the opportunity, he says, meaning we should consider the objection forfeited and thus subject to plain error review. *Id.* at 13. No doubt, the withdrawal of an objection would constitute a waiver. *See, e.g.*, *United States v. Denkins*, 367 F.3d 537, 543–44 (6th Cir. 2004); *United States v. Sheppard*, 149 F.3d 458, 461 (6th Cir. 1998). But we have never held that a defendant must make an objection, then withdraw it, before the point can be waived. In *Aparco-Centeno*, the defendant at sentencing "explicitly agreed" with the Pre-Sentence Report's characterization of his previous convictions as "aggravated felonies" by reiterating that characterization in his sentencing memorandum. 280 F.3d at 1087–88. When he later appealed his sentence, we held that his claim was waived. *Id.* at 1088. So too here: Hall acknowledged the accuracy of the court's ACCA determination and reiterated the applicability of the statutory 15-year mandatory minimum at sentencing, waiving any claim that ACCA should not apply.

But we need not rest our decision on this point alone. Even if Hall had not waived his ACCA claim, he forfeited it by failing to object to the district court's ACCA determination when given the opportunity and therefore cannot prevail without showing that the district court plainly erred. *See United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc). At sentencing the court agreed with the Pre-Sentence Report's finding that Hall "meets the definition of an armed career criminal" and was "subject to the mandatory minimum sentence of 15 years under 18 U.S.C.

§ 924(e)." R.45 at 4; *see* PSR ¶ 29. Immediately after explaining ACCA's applicability to Hall and the corresponding mandatory minimum sentence, the court asked, "Are there any objections to the court's findings with respect to the applicable guidelines and/or the mandatory minimum sentence," to which Hall's counsel replied, "No, your Honor." R.45 at 4. He also failed to raise an ACCA argument at the end of the hearing when the judge asked one last time for objections. *Id.* at 14.

The court did not plainly err in treating Hall as an "armed career criminal." According to Hall, his two prior convictions for aggravated robbery do not categorically count as violent felonies under 18 U.S.C. § 924(e). But, as we held in *United States v. Sanders*, 470 F.3d 616, 619–22 (6th Cir. 2006), "aggravated robbery under Ohio law constitutes a predicate violent felony within the meaning of . . . ACCA." *Sanders*, true enough, dealt with the former version of Ohio's aggravated robbery statute, O.R.C. § 2911.01 (1983) (amended 1997). But the part of § 2911.01 that Hall claims does not categorically constitute a violent felony, § 2911.01(A)(2), represents a portion of the former version of the statute that remains: While § 2911.01 formerly prohibited "hav[ing] a deadly weapon or dangerous ordnance . . . on or about [the offender's] person or under his control" when committing or attempting a theft or fleeing from a theft attempt, § 2911.01(A)(2) now prohibits "hav[ing] a dangerous ordnance on or about the offender's person or under the offender's control" during such a theft or attempt. In this respect, there has been no material change to the provision, establishing that *Sanders* still controls and the district court did not plainly err in following it.

IV.

For these reasons, we affirm.