NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0555n.06

No. 13–1723

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 24, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| ALI DARWICH, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

BEFORE: SILER and KETHLEDGE, Circuit Judges; and WATSON, District Judge.[*]

**MICHAEL H. WATSON, District Judge.** Defendant-Appellant Ali Darwich ("Darwich") was convicted of thirty-three counts of various federal crimes, including seven counts of Using Fire to Commit Fraud in violation of 18 U.S.C. § 844(h)(1). The district court sentenced Darwich to 1,647 months of imprisonment, 1,560 of which it imposed as a mandatory minimum sentence pursuant to 18 U.S.C. § 844(h)(1). Darwich appeals his sentence, through counsel, arguing that the district court improperly applied 18 U.S.C. § 844(h)(1). Darwich also filed a *pro se* brief requesting we vacate his conviction and sentence on other various grounds. For the following reasons, we **AFFIRM** the district court's judgment.

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

Darwich was indicted on numerous federal crimes in connection with a fraud scheme to flood, vandalize, and set fire to several residences and businesses to collect insurance proceeds. Counts 1–12 charged Darwich with Wire Fraud, Aiding and Abetting, in violation of 18 U.S.C. §§ 1343, 2; Counts 13–27 charged him with Mail Fraud, Aiding and Abetting, in violation of 18 U.S.C. §§ 1341, 2; Counts 28–34 charged him with Use of Fire to Commit Fraud, in violation of 18 U.S.C. §§ 844(h)(1), 2; and Count 35 charged him with Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h). A jury convicted Darwich of thirty-three of the thirty-five counts, acquitting him of Counts 19 and 24.

At issue in this appeal is the district court's sentence as to Counts 28–34, which charge Darwich with using fire to commit a felony in violation of 18 U.S.C. § 844(h)(1). Section 844(h)(1) states in relevant part:

> (h) Whoever—
>
> > (1) uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States . . .
> >
> > shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years. In the case of a second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for 20 years. Notwithstanding any other provision of law . . . the term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried.

18 U.S.C. § 844(h)(1).

2

In Darwich's pre-sentence investigation report ("PSR"), the probation officer applied § 844(h)(1) to require an enhanced sentence of ten years for Darwich's first § 844(h)(1) conviction and an additional twenty years for *each* of the six subsequent § 844(h)(1) convictions, to run *consecutively*, resulting in a 130-year mandatory minimum sentence of imprisonment.

Darwich objected to the PSR's application of 18 U.S.C. § 844(h)(1). He specifically objected to paragraphs sixty-nine and seventy, which set forth a mandatory ten-year minimum sentence for his first § 844(h)(1) conviction, to run consecutive to all other counts, and a twenty-year mandatory minimum sentence for each of his remaining § 844(h)(1) convictions, to run consecutive to each other and all counts. Darwich did not develop his objection except to say that he would "file a sentencing memorandum challenging the mandatory consecutive minimum sentences based on separation of powers, equal protection, due process right to individualized sentencing, statutory construction and the Sixth and Eighth Amendments to the Constitution."

Darwich then filed a sentencing memorandum, but he addressed only four of those six bases. He did not develop objections based on statutory construction or the Sixth Amendment. Nor did he challenge the probation officer's conclusion that § 844(h)(1) subjected Darwich to a mandatory minimum sentence of 130 years. Rather, after outlining the statutory language, he concluded that "[b]ased on the directive of the statute, it appears that the Court must impose the following sentences: [listing the sentences as determined by the probation officer]."[1] Darwich then argued that imposing this lengthy, mandated sentence violated the separation of powers doctrine, the right to an individualized sentence, equal protection, and the Eighth Amendment.

---

[1]Darwich also stated that "[g]iven the mandatory minimum sentences imposed consecutively on Counts 28 through 34, the minimum sentences imposed on those counts is 130 years."

3

Darwich persisted in these four constitutional objections at sentencing. Again, however, he did not make a statutory construction argument or challenge the probation officer's conclusion that § 844(h)(1) subjected him to a 130-year mandatory minimum sentence. Rather, his counsel stated: "I think that the consensus between the Government, and the defense and the Probation Department at this point, is that the mandatory minimum before you even address the underlying felonies is 130 years."

The district court overruled Darwich's objections. It sentenced Darwich to eighty-seven months for the wire fraud, mail fraud, and conspiracy convictions, to run concurrent; ten years for the first § 844(h)(1) conviction, to run consecutive to all other counts; and twenty years for each of the other six § 844(h)(1) convictions (130 years total), to run consecutive to each other and all other counts.[2] This resulted in a total of 1,647 months of imprisonment. Darwich filed a timely notice of appeal.

## II. DISCUSSION

### A. Counsel's Claim

Darwich appeals the district court's sentence, arguing that it erred in interpreting 18 U.S.C. § 844(h)(1) to require consecutive enhanced sentences for multiple § 844(h)(1) convictions within a single prosecution. He maintains that the mandatory sentences outlined in § 844(h)(1) do not apply to separate counts of a single prosecution. Rather, he interprets § 844(h)(1) to provide for a single enhanced sentence regardless of the number of § 844(h)(1)

---

[2]The district court also sentenced Darwich to two years of supervised release as to each count, to run concurrently; ordered $1,204,867.62 in restitution; and ordered the forfeiture of certain proceeds, none of which Darwich challenges.

convictions within a prosecution. He further argues that § 844(h)(1) permits district courts to determine whether the sentences for separate § 844(h)(1) convictions within a prosecution should run concurrently or consecutively to each other.

The Government maintains that 18 U.S.C. § 844(h)(1) permits consecutive sentences for multiple § 844(h)(1) convictions that are part of a single case. The Government argues we need not reach the merits of this issue, however, because Darwich waived, or at least forfeited, his argument as to the statutory interpretation of § 844(h)(1).

"In determining whether we have authority to consider an argument not raised below, we distinguish between 'waiver' and 'forfeiture.'" *United States v. Holland*, 522 F. App'x 265, 272 (6th Cir. 2013). "'Waiver' is the intentional relinquishment or abandonment of a known right." *United States v. Hall*, 373 F. App'x 588, 591 (6th Cir. 2010); *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002). As such, "a basic failure to bring an issue to the district court's attention does not create waiver. Rather, waiver requires some affirmative act that shows a party has willfully declined to assert a right." *Holland*, 522 F. App'x at 272 (citation omitted). For example, it is well established that "the withdrawal of an objection would constitute a waiver." *Hall*, 373 F. App'x at 592. "But we have never held that a defendant must make an objection, then withdraw it, before [a] point can be waived." *Id*. Indeed, "'[a]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course.'" *Aparco-Centeno*, 280 F.3d at 1088 (citation omitted); *see also*, *Hall*, 373 F. App'x at 592 (citing *Aparco-Centeno*); *United States v. Smith*, 749 F.3d 465, 494 (6th Cir. 2014) (citing *Aparco-Centeno*); *United States v. Turner*, 436 F. App'x 582, 586 (6th

Cir. 2011) (citing *Hall*). Waived claims are not reviewable. *Hall*, 373 F. App'x at 592; *Aparco-Centeno*, 280 F.3d at 1088. In contrast, "[f]orfeiture occurs when a party fails 'to make the timely assertion of a right,'" and we review forfeited claims for plain error. *United States v. Rodriguez*, 544 F. App'x 630, 633 (6th Cir. 2013).

The record confirms that Darwich waived his claim as to the statutory interpretation of 18 U.S.C. § 844(h)(1). Although he listed "statutory construction" as one of his objections to the PSR's application of § 844(h)(1), Darwich did not explain, develop, or even mention that objection in his sentencing memorandum, let alone raise the statutory interpretation argument he now advances on appeal. Rather, his sentencing memorandum focused only on his four constitutional objections. And in making those constitutional objections, Darwich explicitly stated that "[b]ased on the directive of the statute, it appears the Court must impose" a 130-year mandatory minimum sentence under § 844(h)(1). This conclusion represents an agreement with the PSR's interpretation of § 844(h)(1).

Darwich reiterated his constitutional objections at the sentencing hearing but again did not challenge the conclusion that the statute required a mandatory minimum sentence of 130 years.[3] In fact, he explicitly conceded, through defense counsel, that the application of § 844(h)(1) to his case required a mandatory minimum sentence of 130 years. Indeed, in defending his separation of powers argument at the sentencing hearing, defense counsel stated, "[b]ut when we get to the fourth superseding indictment and Mr. Darwich, I think that the

---

[3]When asked if he had any additional objections or concerns at the conclusion of the sentencing hearing, defense counsel responded that he did not and was only preserving his prior objections.

consensus between the Government, and the defense and the Probation Department at this point, is that the mandatory minimum before you even address the underlying felonies is 130 years."

We have previously found a defendant to have waived a claim under similar facts. In *Hall*, the defendant challenged the district court's application of a sentencing enhancement pursuant to the Armed Career Criminal Act. 373 F. App'x at 591. Although the defendant's counsel had previously reserved the right to dispute the enhancement at sentencing, he instead argued that the prosecutor should have exercised more prosecutorial discretion. In so arguing, the defendant's counsel conceded the applicability of the enhancement and admitted that the defendant was subject to a mandatory minimum. We found this to constitute waiver of the defendant's argument as to the sentencing enhancement. The defendant argued that he could waive his argument only by objecting to the enhancement and then making an actual, affirmative withdrawal of that objection. He maintained that his counsel merely failed to renew his objection when given the opportunity, rendering his claim forfeited rather than waived. *Id*. We rejected this argument, finding that by "acknowledg[ing] the accuracy of the court's [enhancement] determination and reiterat[ing] the applicability of the statutory 15-year mandatory minimum at sentencing," the defendant waived any claim that the enhancement should not apply. *Id*.

Similarly, defense counsel's statements in his sentencing memorandum and at the sentencing hearing in this case represent a concession in open court that the probation officer and the district court accurately interpreted § 844(h)(1) to impose a 130-year mandatory minimum sentence. By agreeing with the probation officer and the district court that § 844(h)(1) subjected

Darwich to a 130-year mandatory minimum, Darwich agreed to the interpretation of the statute that resulted in that 130-year sentence. As such, Darwich cannot now argue the court erred in applying the statute in accordance with that interpretation. *See Aparco-Centeno*, 280 F.3d at 1088 (finding the defendant waived his argument that his two prior felonies should not qualify as aggravated felonies for sentencing purposes where his counsel did not object to such a finding in the PSR and explicitly agreed in his sentencing memorandum with the PSR's position); *see also*, *Smith*, 749 F.3d at 494–95 (finding the defendant waived his argument that the district court improperly excluded expert testimony where his counsel "unequivocally agreed" at trial that the witness was not considered an expert); *United States v. Donovan*, 539 F. App'x 648, 658 (6th Cir. 2013) (finding the defendant waived his challenge to the district court's failure to apply an offense-level reduction where the defendant agreed at sentencing that the reduction was inappropriate); *Holland*, 522 F. App'x at 272 (finding the defendant waived his theory that a search was conducted without consent where his counsel explicitly disavowed the theory at a suppression hearing and pursued other arguments as to the invalidity of the search)[4]; *Turner*, 436 F. App'x at 586 (finding waiver where defense counsel agreed with the Government's position at the sentencing hearing); *United States v. King*, 430 F. App'x 514, 517 (6th Cir. 2011) (finding the defendant waived his challenge to the application of a sentencing enhancement where at sentencing the defendant withdrew his objection to the PSR's application of the

---

[4]We found that the defendant in *Holland* "unequivocally asserted a violation of his Fourth Amendment right," but "explicitly disavowed the theory that the violation stemmed from entry into the apartment without consent." *Holland*, 522 F. App'x at 272. Similarly, although Darwich unequivocally challenged the application of the 130-year mandatory minimum sentence pursuant to § 844(h)(1), he conceded that such a challenge was not based on the PSR's conclusion that the statute required such a sentence.

enhancement and expressly conceded its applicability); *United States v. Ward*, 506 F.3d 468, 477 (6th Cir. 2007) (finding waiver of argument that provision of sentencing guidelines is unconstitutionally vague where the defendant made the argument as an objection to the PSR but at the sentencing hearing and in a subsequent motion represented that all objections had been resolved except three other enumerated challenges); *compare with*, *Rodriguez*, 544 F. App'x at 634 (finding forfeiture where defense counsel withdrew his objection to certain testimony "without explicitly conceding admissibility").

In sum, Darwich has waived any argument that the district court improperly interpreted 18 U.S.C. § 844(h)(1) to require a 130-year mandatory minimum sentence in his case, and we are thus unable to review such a claim on appeal.[5]

**B. Darwich's *Pro Se* Brief**

About one month after Darwich's counsel filed an appellate brief on Darwich's behalf, Darwich filed his own supplemental brief[6] in which he requests we vacate his conviction and sentence on the grounds that: (1) he was subject to selective prosecution; (2) he was denied the right to a fair trial by a jury of his peers; (3) the district court erred in determining he breached

---

[5]We note that we may still review a waived claim where our failure to do so would result in a plain miscarriage of justice. *See, e.g.*, *Humphrey v. United States Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (citation omitted). But a review of the merits of Darwich's statutory interpretation claim does not indicate that the district court's application of § 844(h)(1) was an error so egregious so as to qualify as a plain miscarriage of justice.

[6] Although we denied Darwich's motion to proceed *pro se*, we granted him leave to file his supplemental brief.

his immunity agreement with the Government; and (4) the district court erred in denying him

funds to obtain a private investigator.[7]

## 1. Selective Prosecution

Darwich, who is of Lebanese descent and Muslim faith, claims he was subject to

selective prosecution on the basis of his ethnicity and religion. He argues the Government chose

to prosecute the Arab participants in the insurance fraud scheme while foregoing prosecution of

more culpable Caucasian and African American participants. Darwich moved to dismiss the

fourth superseding indictment on the ground that the Government chose to prosecute the Arab-

American participants in the conspiracy but not the "White-Americans" or "Blac-Americans"

[sic]. The district court terminated Darwich's motion without prejudice on the ground that it was

a repetitive, frivolous motion in violation of the court's previous orders and rules of procedure.

Darwich also made various *pro se* motions discussing selective prosecution. Finding no

evidence of such a claim, the district court granted the Government's motion *in limine*

precluding him from discussing the issue at trial.

To the extent Darwich intends to challenge the district court's failure to dismiss his

indictment on selective prosecution grounds, we review such a claim for clear error. *United

States v. Jones*, 399 F.3d 640, 644 (6th Cir. 2005) (citation omitted).

---

[7]It is worth noting that Darwich elected to proceed *pro se* throughout the majority of his case, including his trial. The district court appointed him stand-by counsel, from whom the record indicates Darwich did not seek much assistance. Consequently, the district court found itself amidst a plethora of *pro se* motions, the majority of which the district court found frivolous and repetitive. Many of the arguments Darwich makes in his supplemental brief are the same arguments he made before the district court.

"Prosecutors have great discretion when determining which cases to prosecute." *United States v. Brimite*, 102 F. App'x 952, 955 (6th Cir. 2004) (citation omitted). "As long as the prosecutor has probable cause to believe that an accused has committed an offense defined by statute, decisions regarding whether to prosecute and what charges to file generally rest entirely within the prosecutor's discretion." *Id.* (citation omitted). "However, the decision to prosecute may not be based on a defendant's race, sex, religion, or exercise of a statutory or constitutional right." *Id.* (citation omitted).

> To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a discriminatory effect and a discriminatory intent. To establish discriminatory intent in a case alleging selective prosecution based on race, a claimant must show that the prosecutorial policy was motivated by racial animus; to establish discriminatory effect, the claimant must demonstrate that similarly situated individuals of a different race were not similarly prosecuted.

*Jones*, 399 F.3d at 645 (citation omitted).

Darwich has failed to establish either discriminatory intent or discriminatory effect. Regarding discriminatory intent, Darwich claims that the Government prosecuted him only because it believed he was funding a terrorist organization in Lebanon, not because it was interested in prosecuting the fraud scheme. Darwich fails to support this bare allegation. Rather, the evidence before the district court, including Darwich's statements to investigators, establishes that the Government had probable cause to believe that Darwich played a pivotal role in the insurance fraud scheme. Regarding discriminatory effect, Darwich alleges that the Government chose not to prosecute the more culpable Caucasian and African-American participants in the fraud scheme and specifically points to the Government's decision not to

11

prosecute Sydney Chavetz. However, Darwich presents no evidence indicating any of these individuals were similarly situated as is required to establish discriminatory effect.

In sum, Darwich's unsubstantiated claims that he was targeted for prosecution as an Arab Muslim are insufficient to establish selective prosecution, and therefore, the district court did not clearly err in failing to dismiss the indictment on that ground.

To the extent Darwich intends to challenge the district court's order granting the Government's motion *in limine* precluding him from discussing selective prosecution at trial, we find the district court correctly granted the Government's motion *in limine,* as "the defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury." *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006).

We therefore decline to vacate Darwich's conviction or sentence on the ground of selective prosecution.

**2. Right to a Fair Trial by a Jury of his Peers**

**a. *Batson* Claim**

Darwich next argues that the Government's peremptory challenge to the only "Arabic" juror violated his rights as outlined in *Batson v. Kentucky*, 476 U.S. 79 (1986).

"In *Batson v. Kentucky* . . ., the Supreme Court held that the Equal Protection Clause forbids the prosecution's use of peremptory challenges to exclude jurors on the basis of race." *United States v. Simon*, 422 F. App'x 489, 493 (6th Cir. 2011).

> When a party raises a *Batson* challenge, courts must perform a three-step analysis. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. . . . Once a prima facie case is established, the burden shifts to the

prosecutor to present a race-neutral explanation for striking the juror in question. .
. . [A]s a final step, reviewing courts must assess the prosecutor's credibility,
weigh the strength of the prosecution's asserted justification against the
defendant's prima facie case, and determine whether a defendant has carried his
burden of proving purposeful discrimination in light of all relevant circumstances,
including comparative juror analysis and arguments related to pretext.

*Id.* (internal quotation marks and citations omitted). "On direct review, 'the trial court's decision

on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded

great deference on appeal' and will not be overturned unless clearly erroneous." *United States v.

Odeneal*, 517 F.3d 406, 419 (6th Cir. 2008) (citation omitted).

Darwich claims that: (1) he objected to the Government's peremptory challenge to the

only "Arabic" juror in the venire based on discrimination; (2) the district court overruled his

objection on the ground that another Arabic speaking juror remained; and (3) in doing so, the

district court accepted the Government's explanation for its strike without a meaningful review.

In order to review this claim, we require a transcript of voir dire. Federal Rule of

Appellate Procedure 10 required Darwich to include the transcript in the record, or if it was

unavailable, prepare a statement from his recollection as to what occurred during voir dire, serve

it upon the opposing party, and submit it to the district court for settlement and approval to be

made part of the record. *Smith v. Yarrow*, 137 F. App'x 778, 780 (6th Cir. 2005) (citing Fed. R.

App. P. 10(b)(2), (c)).[8] Because voir dire was not ordered transcribed in this case, Darwich had a

duty to provide a statement of recollection pursuant to Rule 10(c). *Id.* He did not.

---

[8]Federal Rule of Appellate Procedure 10 provides, in relevant part:

(b)(2) **Unsupported Finding or Conclusion.** If the appellant intends to urge on
appeal that a finding or conclusion is unsupported by the evidence or is contrary

Absent a transcript or statement of recollection, we cannot verify that Darwich "made a proper objection, preserving the issue for appeal[,] or examine the explanation, if any, the district court may have provided for its decision on the record." *Id.* Accordingly, the record before us does not allow for a review of this claim, and therefore, the issue is waived. *See id.* (internal quotations and citations omitted); *see also*, *Lane v. City of Jackson*, 86 F. App'x 874, 874 (6th Cir. 2004) (finding the appellant waived his sufficiency of the evidence claim where he did not supply the court with a trial transcript, move for the preparation of a transcript at the government's expense, or prepare an appropriate statement of evidence under Rule 10(c)); *Alhasan v. Pizza Hut of America*, 70 F. App'x 828, 829 (6th Cir. 2003) (same).

**b. Fair Cross-Section Claim**

Darwich also argues he was denied his Sixth Amendment right to a jury chosen from a fair cross-section of the community. "'Whether a defendant has been denied his right to a jury selected from a fair cross-section of the community is a mixed question of law and fact, which

---

to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion.
. . .

(c) **Statement of the Evidence When the Proceedings Were Not Recorded or When a Transcript Is Unavailable.** If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement must be served on the appellee, who may serve objections or proposed amendments within 14 days after being served. The statement and any objections or proposed amendments must then be submitted to the district court for settlement and approval. As settled and approved, the statement must be included by the district clerk in the record on appeal.

Fed. R. App. P. 10(b)(2), (c).

we review *de novo.*'" *United States v. Suggs*, 531 F. App'x 609, 618 (6th Cir. 2013) (citation

omitted).

The Sixth Amendment requires that a jury venire represent a fair cross-section of the

community. *Id.*

> To show a prima facie violation of this requirement, [a defendant] must
> demonstrate "(1) that the group alleged to be excluded is a 'distinctive' group in
> the community; (2) that the representation of this group in venires from which
> juries are selected is not fair and reasonable in relation to the number of such
> persons in the community; and (3) that this underrepresentation is due to
> systematic exclusion of the group in the jury-selection process." *Duren v.
> Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Exclusion is
> "systematic" if it is "inherent in the particular jury-selection process utilized." *Id.*
> at 366, 99 S.Ct. 664. Once a defendant establishes a prima facie case, the
> government has the burden to justify the "infringement by showing attainment of
> a fair cross section to be incompatible with a significant state interest." *Id.* at 368,
> 99 S.Ct. 664.

*Id.* at 619.

Darwich claims he asserted a fair cross-section objection at the same time that he asserted

his *Batson* objection. Without a transcript of voir dire, however, we cannot determine whether

Darwich in fact made a proper objection that is preserved for appeal. Nevertheless, even

assuming he did, his claim fails on the merits.

Darwich claims that his jury pool did not consist of a fair cross-section of eligible Arab

and Muslim peers and that the jury selection procedures in the Eastern District of Michigan

systematically exclude Arab and Muslim citizens from the district's jury pools. Darwich's claim

fails because he has not presented any evidence of the elements required to establish a *prima*

*facie* violation. Rather, his entire argument is based on conclusory allegations. Darwich does

15

state that his jury pool included only one prospective Arab juror and one juror who claimed to speak Arabic, but "[i]t is incumbent upon the defendant to show more than that a particular jury panel was unrepresentative." *Id.* at 619 (citation omitted). Because Darwich failed to provide any evidence that a "systematic underrepresentation was 'inherent in the particular jury-selection process utilized[,]'" he cannot establish that he was denied his right to a jury selected from a fair cross-section of the community. We therefore decline to vacate his conviction and sentence on this ground. *Id.*[9]

## 3. Breach of Immunity Agreement

Darwich next argues the district court erred in determining that he breached his immunity agreement with the Government.

Two main types of immunity the Government may offer a suspect in return for his disclosure of information are transactional immunity and use immunity. Transactional immunity "is full immunity from prosecution for any offenses to which [the suspect's] testimony relates." *United States v Fitch*, 964 F.2d 571, 575 (6th Cir. 1992) (citation omitted). In contrast, use immunity precludes only the use of the suspect's statements in a prosecution against him. *Kastigar v. United States*, 406 U.S. 441, 453 (1972). An immunity agreement granting a defendant use immunity is commonly referred to as a *Kastigar* agreement. "The conditions that will constitute a breach of the immunity agreement are governed by the agreement itself." *Fitch*, 964 F.2d at 574 (citation omitted). The Government bears the burden of proving a breach, and

---

[9]Darwich also argues that the district court should have conducted a hearing on his fair-cross section claim. However, the cases he cites in support require a hearing on *Batson* challenges, not on fair-cross section claims. *See United States v. McAllister*, 693 F.3d 572, 580 (6th Cir. 2012); *United States v. Torres-Ramos*, 536 F.3d 542, 559 (6th Cir. 2008).

the breach must be material and substantial. *Id*. (citation omitted). "Although an inadvertent omission or oversight would not rise to the level of a materially false statement so as to constitute a breach of the agreement, a bad faith, intentional, substantial omission . . . does constitute a materially false statement and thereby a breach of an agreement." *Id*. (citation omitted).

On May 13, 2009, Darwich signed a document granting him some level of immunity from prosecution. On May 22, 2009, FBI agents interviewed Darwich. Thereafter, Darwich was charged with one count of conspiracy to commit arson and two counts of arson.

Darwich moved to dismiss the indictment, or in the alternative limit the admissibility of any statement he made to law enforcement at the May 22nd meeting, on the ground that he believed the Government granted him transactional immunity. The district court held an evidentiary hearing to determine: (1) the type of immunity agreement that existed between the Government and Darwich; and (2) whether Darwich breached that immunity agreement. The Government argued that the document Darwich signed on May 13th was a *Kastigar* agreement granting him use immunity and that Darwich breached that agreement by making materially false statements and omissions during his May 22nd proffer. Darwich attempted to establish that he signed a document granting him transactional immunity. He argued that the Government conspired with his counsel to either forge his signature on a separate *Kastigar* agreement or change the substance of the transactional immunity agreement after he signed it.

The district court ultimately determined that the agreement Darwich signed on May 13th was a *Kastigar* letter granting him use immunity and that Darwich failed to prove the existence

of a transactional immunity agreement. Thus, it denied Darwich's motion to dismiss.[10] The district court then determined that Darwich substantially and materially breached that *Kastigar* agreement by intentionally making false statements and omitting relevant facts during his May 22nd proffer. Following multiple motions by Darwich challenging these determinations, the district court granted the Government's motion *in limine* preventing Darwich from discussing the alleged transactional immunity agreement at trial.

Darwich now argues the district court erred in determining that he was not granted transactional immunity and in finding that he breached whatever immunity agreement he did have. Repeating the same argument he made before the district court, he first contends the Government granted him transactional immunity. Because he does not cogently develop an argument to that effect, however, we decline to disturb the district court's finding that the only immunity agreement that existed between Darwich and the Government was that for use immunity as outlined in the *Kastigar* letter.

Darwich next argues the district court erred in finding that he substantially and materially breached his immunity agreement. It did not. The *Kastigar* agreement required Darwich to "make a complete and truthful statement of his knowledge of (and role in) the matters under investigation, and to fully and truthfully answer all questions." It explicitly clarified that Darwich "may not omit facts about crimes, other participants, or his [ ] involvement in the offenses, and must volunteer all information that is reasonably related to the subjects discussed in the debriefing." In exchange for such disclosure, the Government would not offer any of

---

[10]Darwich later moved to dismiss the Fourth Superseding Indictment on the same grounds, which the district court also denied.

Darwich's statements in its case-in-chief in any criminal prosecution of Darwich for the matters under investigation. If Darwich failed "to provide truthful and complete information (such as by making a false statement, providing false information, omitting facts or otherwise misleading the government)," there would be no restrictions on the Government's use of any of his statements. In other words, if Darwich breached the agreement, he would no longer enjoy immunity.

The district court found that Darwich breached the agreement by: (1) failing to provide information regarding his alias, Abdullah Derbas; (2) intentionally lying to or misleading agents regarding their investigation into the marriage of Fatima Toufaili[11] and the paternity of her eldest child; (3) intentionally omitting or downplaying Toufaili's involvement in the arsons; (4) failing to provide any information regarding the involvement of "Tony," "Playboy," Rabih Ali, Mazen Mazraani, and possibly others; (5) failing to volunteer details regarding all of the properties involved in the various arsons; and (6) misrepresenting his business. The district court also pointed to Darwich's tape recorded post-proffer admissions to his wife that he had lied to the Government as evidence that Darwich did in fact breach the agreement by lying to federal officials.

Citing *Fitch*, 964 F.2d at 571, Darwich argues that his lies were just a thinly veiled attempt to minimize his involvement in the scheme, which he maintains does not constitute a substantial material breach. *Fitch* is distinguishable. In *Fitch*, we found that the defendant did not substantially and materially breach his immunity agreement where his false implication of another as the source of a drug deal was nothing more than an effort to minimize his involvement

---

[11] Fatima Toufaili is Darwich's wife and co-defendant.

and that the Government was not misled by his untruths. *Id*. at 574–75. Even assuming Darwich's misrepresentations similarly did not constitute a substantial material breach, that does not render clearly erroneous the district court's finding that his omissions did. Moreover, we emphasized in *Fitch* that the defendant's fabrication was not sufficient to constitute a substantial material breach because he supplied the Government with a substantial amount of incriminating information and assisted the investigation in other ways. *Id.* In other words, we found that although defendant's fabrications were a technical breach of the agreement, they were insufficient to constitute a substantial material breach because the Government still "received the benefit of its bargain." *Id*. at 575. Darwich does not demonstrate a similar result here and neither does our review of the record.

Accordingly, to the extent Darwich challenges the district court's denial of his motion to dismiss the indictment based on an alleged immunity agreement, we find that the district court's determination that he substantially and materially breached his *Kastigar* agreement was not clearly erroneous. *See id.* at 574 (applying the clearly erroneous standard to review of district court's decision as to whether the defendant breached his immunity agreement). To the extent Darwich challenges the district court's order granting the Government's motion *in limine* precluding him from discussing the alleged transactional immunity agreement at trial, we cannot find that the district court abused its discretion in preventing discussion of an immunity agreement that it found did not exist. *See Abboud*, 438 F.3d at 579 (reviewing evidentiary rulings for abuse of discretion). We therefore decline to vacate Darwich's conviction and sentence on this ground.

**4. Funds for a Private Investigator**

Lastly, Darwich argues the district court denied him due process and a fair trial by denying his requests for funds for a private investigator ("PI") pursuant to 18 U.S.C. § 3006A.

"We review the district court's denial of an indigent defendant's request for authorization for investigative services under 18 U.S.C. § 3006A for an abuse of discretion." *United States v. Pacheco,* 466 F. App'x 517, 521 (6th Cir. 2012) (citing *United States v. Gilmore*, 282 F.3d 398, 406 (6th Cir. 2002)).

18 U.S.C. § 3006A(e)(1) permits district courts to authorize payment for investigative services for an indigent defendant. *Id.* District courts may authorize investigative services "'upon a demonstration that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced.'" *Id.* (citing *Gilmore*, 282 F.3d at 406).

Throughout the pendency of his case, Darwich made numerous motions requesting funds for a PI. The district court denied all of those motions for failure to establish necessity. Darwich does not specify the orders of which he seeks review, but we find that the district court did not abuse its discretion in denying any of Darwich's § 3006A(e)(1) motions. First, the district court did not abuse its discretion in denying Darwich's early motions for a PI as they consisted of only general averments that he required a PI to aid in his defense and did not specify what he expected the PI to find.

The district court likewise did not abuse its discretion in denying Darwich's later motions for a PI. Although his later motions specified the various topics that he intended the PI to

investigate and the various tasks he required the PI to undertake, a review of those reasons and tasks confirms that Darwich still failed to establish necessity because he sought "information as to issues already definitively decided by the court, information which is irrelevant, or, most prominently, information which could be obtained through Defendant's stand-by counsel." Furthermore, we agree with the district court that Darwich failed to show that his stand-by counsel was incapable of completing, or at least starting, the tasks for which Darwich sought a PI.

Accordingly, although Darwich was indigent, he failed to show through any of his motions that appointment of a PI, especially in light of his stand-by counsel, was necessary to mount a plausible defense. The district court thus did not abuse its discretion in denying any of Darwich's motions for a PI, and we decline to vacate his judgment of conviction or sentence on this ground.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.