NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0165n.06

Case No. 21-3151

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|   Plaintiff-Appellee, | ) | Apr 20, 2022 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| CHRISTOPHER C. ROBERTS, | ) | THE SOUTHERN DISTRICT OF |
|  | ) | OHIO |
|   Defendant-Appellant. | ) |  |
|  | ) |  |

Before: SUTTON, Chief Judge; WHITE and THAPAR, Circuit Judges.

SUTTON, Chief Judge. Christopher Roberts contends that the district court violated his Sixth Amendment rights when it refused to allow him to fire his lawyer on the morning of his criminal trial. But Roberts voluntarily waived his right to bring this type of appeal as part of a plea deal in which he pleaded guilty to being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g). We therefore must dismiss the appeal.

While executing a warrant, FBI agents discovered a handgun and loaded magazine under an air mattress in Roberts' residence in Dayton, Ohio. DNA analysis identified Roberts as the person who had most frequently handled the handgun. Because Roberts had a state-court conviction for aggravated trafficking and possession of illegal drugs, a federal grand jury indicted him for being a felon in possession of a firearm.

Roberts had been charged for the earlier and unrelated offense of aiding and abetting his brother's possession of a firearm as a felon in 2018. The district court appointed Aaron Durden as Roberts' counsel in that case. In 2020, the government decided to dismiss the aiding and abetting charge and focus on Roberts' own felon-in-possession offense, but Durden continued to represent Roberts. The trial on the new charge was scheduled for August 2020, but the district court delayed it due to the COVID-19 pandemic.

The court set Roberts' trial date for October 13, 2020. More than a month before the trial, the government offered a plea deal under which Roberts would receive a guidelines reduction for acceptance of responsibility. Shortly before the trial, it sweetened the deal by offering a sentence of time served.

One week before the trial, Durden moved to withdraw, citing "irreconcilable differences between the client and this counsel." R.10. Durden later explained that his client did not make himself available to meet in the days leading up to the trial, which Roberts claims was because he thought Durden had ended the representation. Two days before the trial, Roberts asked the court to assign him new counsel and to continue the trial. The district court held a hearing on the withdrawal motion on the morning of the scheduled trial. After hearing from Roberts and Durden, the court denied the motion.

Rather than proceed to jury selection, Roberts signed the plea deal still on the table. He agreed to plead guilty to the felon-in-possession charge in exchange for a time-served sentence, meaning he would not have to serve any more prison time. By signing the plea agreement, he waived his right to appeal his conviction or sentence. During the plea colloquy, the district court asked Roberts six times whether his guilty plea was voluntary, confirmed that it was voluntary,

2

and confirmed that Roberts understood the implications of the appeal waiver. The court accepted the agreement and sentenced Roberts to time served and a one-year term of supervised release.

Roberts appeals his conviction, arguing that his guilty plea was involuntary and that the district court abused its discretion in denying his motion for a new attorney.

"Any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily." *United States v. Ashe*, 47 F.3d 770, 775–76 (6th Cir. 1995). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

Where, as here, a defendant challenges his guilty plea for the first time on appeal, we review for plain error. *United States v. Vonn*, 535 U.S. 55, 58–59 (2002); *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). To meet that standard, the error must be "clear or obvious," it must affect the defendant's substantial rights, and it must be one that, if left uncorrected, would call the integrity of the judicial proceeding into question. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

The appeal waiver, as an initial point, covers Roberts' substitution-of-counsel claim. The terms of the waiver are broad. Through the agreement, he "waive[d] the right to appeal the conviction and sentence imposed, except if the sentence imposed exceeds the statutory maximum." R.14 at 4. The only other carve-outs cover ineffective assistance of counsel or prosecutorial misconduct. By its terms, the waiver covers this "appeal" with respect to this "conviction."

But was the plea agreement voluntary? Yes. During the plea colloquy, Roberts repeatedly said that he knew what he was doing when he entered his guilty plea. The district court confirmed six times that his plea was voluntary, and it verified that Roberts believed he was able to make this

3

decision voluntarily despite his difficulties with his counsel. The record demonstrates that the court hewed to Criminal Rule 11's procedural requirement that it "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises." Fed. R. Crim. P. 11(b)(2). "A criminal defendant," we have made clear, "is bound by the answers he gives when" the district court closely adheres to the Rule 11 requirements "for a properly conducted plea colloquy." *United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021).

Because Roberts did not challenge the voluntariness of his guilty plea below, our review is for plain error. Under plain error, as shown, we need more than an unwaived error to reverse; we would need to find an error that was clear or obvious and affected the fundamental fairness of the district court proceedings. *Puckett*, 556 U.S. at 135. Given the fullness of the plea colloquy in this case, Roberts' claims fall well short of that high bar.

Roberts insists that the district court's denial of his motion to substitute counsel and the pressure from his impending trial made his plea involuntary. But the district court started the plea colloquy by asking whether Roberts' guilty plea was "a total voluntary decision on your part." R.44 at 3. Roberts responded, "Yes, Your Honor." *Id.* More specifically, the court asked about Roberts' prior motion to substitute, confirming that even though "we've talked about several things that maybe you were not satisfied with regard to representation," this was "a decision that you have made" and Roberts had "not been forced or intimidated by anyone with regard to entering this plea." *Id.* Roberts again responded, "Yes, Your Honor." *Id.* Later in the proceedings, the court explained the rights Roberts was waiving and confirmed, "you're assuring me that this is a voluntary decision; you are not being pressured?" *Id.* at 18. Roberts responded, "Yes, sir." *Id.* And near the end of the colloquy, the court asked whether anyone was threatening or compelling Roberts to enter his plea. Roberts responded, "No, sir." *Id.* at 23. The court asked whether he

had thoughtfully considered the decision and he answered, "Yes, sir." *Id.* For good measure, the court asked whether this was "a totally voluntary decision on your part?" *Id.* at 23–24. Roberts responded, "Yes, sir." *Id.* at 24. Keeping tally, the district court asked Roberts six different questions about whether he voluntarily accepted the plea, and each time he answered, "Yes."

We have rejected a similar involuntariness claim in the past, finding that a defendant's assurances that his plea was voluntary during a change of plea hearing outweighed any pressure stemming from the denial of a motion to substitute on the day of a trial. *United States v. Blanco-Gaspita*, 48 F. App'x 998, 999 (6th Cir. 2002). So have other courts. *See, e.g.*, *United States v. Foreman*, 329 F.3d 1037, 1039 (9th Cir. 2003) ("Failure to substitute counsel does not by itself render a plea involuntary."), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 949 (9th Cir. 2007) (en banc); *United States v. Malave*, 22 F.3d 145, 148 (7th Cir. 1994). More generally, adverse pretrial rulings do not by themselves render a subsequent guilty plea involuntary. *See United States v. Davis*, 954 F.2d 182, 185 (4th Cir. 1992). Through it all, the key point is "that no one forced him to enter the plea and that he was not promised anything for entering the plea." *United States v. Hall*, 373 F. App'x 588, 590 (6th Cir. 2010). The reality that Roberts faced "two unattractive options," going to trial with a lawyer he clashed with or taking a guilty plea with its attendant collateral consequences, does not by itself create "a cognizable theory of coercion." *Id.* at 591.

Roberts does not raise any other separate grounds for why his guilty plea was involuntary. Having failed to show why we should not honor the terms of his plea agreement, including the appeal waiver, we dismiss his appeal.