NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0008n.06

Case No. 25-5141

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 06, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| UDELL CARROLL, III, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: COLE, MATHIS, and HERMANDORFER, Circuit Judges.

COLE, Circuit Judge. A law enforcement officer stopped Udell Carroll, III, for speeding. After Carroll admitted he possessed marijuana, officers searched his car and uncovered marijuana, methamphetamine, and a firearm. Carroll, acting pro se, requested Criminal Justice Act (CJA) funds to hire an investigator. The district court denied his request without holding a hearing on the motion. Carroll appeals the denial, and in the alternative, argues the district court abused its discretion by failing to hold an evidentiary hearing regarding his request. For the reasons below, we affirm.

I.

On November 19, 2021, Carroll was traveling on Interstate 40. An agent of the West Tennessee Violent Crimes and Drug Task Force, Andre Nash, stopped Carroll in Fayette County, Tennessee, for speeding. Nash asked Carroll some questions, including whether he had anything illegal in his car. In response, Carroll admitted that he had an eighth of marijuana, prompting Nash

and another officer to search the car. They discovered marijuana and methamphetamine. Officers towed the car and through an inventory search, later uncovered a firearm in the trunk.

A grand jury indicted Carroll for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). The district court appointed counsel, who moved to suppress the evidence discovered in Carroll's car. Meanwhile, Carroll, acting pro se, filed a letter with the court asserting that the video of the stop had been edited. The magistrate judge held a hearing on the motion to suppress.

Soon after, Carroll moved to withdraw counsel and proceed pro se. Carroll also moved pro se to suppress the evidence seized from the search of his car, to set aside or reopen the suppression hearing, and for funding to hire an investigator under 18 U.S.C. § 3006A(e)(1). In his various filings, Carroll asserted that the footage of the stop was altered to remove five minutes of the encounter.

The district court granted Carroll's motion to proceed pro se but denied his motion for funding to hire an investigator because Carroll was represented by counsel at the time of filing. As Carroll would be proceeding pro se moving forward, the district court instructed Carroll that he could refile his motion so long as his effort to obtain investigative services was reasonable and necessary. Carroll renewed his request for funding to hire an investigator, but the district court again denied his request. He also requested a second suppression hearing on the body camera footage, arguing that the government had not "turn[ed] over all unredacted footage[.]" (Letter, R. 68, PageID 290.)

In the meantime, the magistrate judge issued a report and recommendation, recommending the district court deny the motion to suppress filed by counsel. The magistrate judge also addressed Carroll's pro se contention that the video had been altered, finding "there is no evidence to indicate that the video has been altered." (R. & R., R. 50, PageID 112 n.1.) Carroll objected to the report and recommendation, arguing in part that five minutes of the stop were missing from the body camera footage. The district court nonetheless adopted the report and recommendation and denied the motion to suppress. Responding to Carroll's claim that the body camera footage had been altered, the district court noted that it had "reviewed the record, including the video, as well as supporting testimony" and found "no evidence to indicate improper alteration." (Order Adopting R. & R., R. 71, PageID 305.)

The district court, on the government's motion, dismissed the firearm-related charges, and the case proceeded to trial on only the possession with intent to distribute methamphetamine count. Following trial, a jury found Carroll guilty. Carroll again moved for investigative funding and to exclude improper evidence. The district court denied both motions, reasoning that the motion for investigative services sought to "relitigate the bodycam video's admissibility" and "would not contribute anything at Carroll's sentencing." (Order, R. 165, PageID 966, 967.) The district court imposed a custodial sentence of 200 months. Carroll timely appeals.

## II.

Carroll argues the district court abused its discretion by denying his request for funding for an investigator, or in the alternative, by failing to hold an evidentiary hearing on this claim. For its part, the government argues the district court did not abuse its discretion, and even if there was any error, it was harmless. Because we conclude that the district court did not abuse its discretion, we need not review for harmless error.

We review both a district court's denial of a request to authorize funds for investigatory services and a district court's decision not to conduct an evidentiary hearing for an abuse of discretion. *See, e.g.*, *United States v. Gilmore*, 282 F.3d 398, 406 (6th Cir. 2002) (denial of 18 U.S.C. § 3006A(e)(1) motion); *Williams v. Bagley*, 380 F.3d 932, 977 (6th Cir. 2004) (refusal to conduct evidentiary hearing). A district court abuses its discretion by applying the incorrect legal standard, misapplying the correct legal standard, or relying on clearly erroneous factual findings. *Bojicic v. DeWine*, 145 F.4th 668, 670–71 (6th Cir. 2025).

A.

We first examine whether the district court abused its discretion by denying Carroll's 18 U.S.C. § 3006A(e)(1) motion for funding. Carroll thrice sought funding for investigative services. The district court denied all three requests. Carroll discusses only the second denial in his argument. We limit our analysis accordingly.

In his second § 3006A(e)(1) motion, Carroll requested funds to enlist the help of an investigator to obtain a timestamped dispatch radio log from the traffic stop, an unaltered preliminary hearing transcript, and a chain of custody receipt for the body camera footage. He also requested the investigator follow up on "the inconsistencies with the video evidence[.]" (Mot. for Expert Funding, R. 61, PageID 262.) He sought these funds under the CJA, which permits an indigent defendant to petition a court for federal funds to obtain investigative, expert, or other necessary services. 18 U.S.C. § 3006A(e)(1).

A district court may authorize payment of such funds if a defendant demonstrates "that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced." *Gilmore*, 282 F.3d at 406. A district court, however, need

not grant a § 3006A(e)(1) motion "on the off chance that the requested services might turn up something." *Id.*

The district court denied Carroll's request, concluding that he failed to "demonstrate[] that funding for an investigator is necessary to mount a plausible defense, or that his case will be prejudiced without such authorization." (Order, R. 70, PageID 295.) The court added that Carroll failed to describe "in any detail" how the requested materials would impact his ability to defend himself and advanced only general speculations about inconsistencies in the case. (*Id.*) We agree.

Carroll failed to sufficiently explain how the investigative services would benefit his defense. In his motion, Carroll asserted that the records were "pertinent to [his] defense[,]" that he had "grave concerns with the integrity of [his] case[,]" and that "[t]here are numerous inconsistencies in this matter." (Mot. for Expert Funding, R. 61, PageID 262–64.) He contended that the evidence was "necessary to support his theory of defense." (*Id.* at PageID 264.) But he failed to identify the alleged inconsistencies or state what the log and chain of custody may show and how they could impact his ability to defend himself.

On appeal, Carroll argues the footage would have changed the outcome of the suppression decision and undermined Nash's credibility during cross-examination at trial. He claims the missing footage would show that at the beginning of the stop, Nash told him "that he had 'cleared' the rental car before approaching him, that [Nash] needed to 'run' [Carroll's] name and then he would be free to leave, and then informed Carroll that he checked out with no warrants, but that [Nash] needed more information on the vehicle." (Appellant Br. 15 (quoting Letter, R. 68, PageID 290).)

Carroll, however, did not raise the missing footage in his second motion for investigative services, nor did he identify that the requested services could change the suppression outcome or

assist in cross-examination. Rather, he made these arguments in a letter to the court nearly two months after moving for investigative funding. Nowhere in the letter did Carroll mention his need for investigative services; instead, he seemingly requested a second suppression hearing "to vet out the truth." (Letter, R. 68, PageID 290.) We thus cannot conclude that the district court abused its discretion by denying a motion that "consisted of only general averments that he required [investigative services] to aid in his defense and did not specify what he expected the [investigator] to find." *See United States v. Darwich*, 574 F. App'x 582, 594–95 (6th Cir. 2014).

B.

We next consider Carroll's claim that the district court abused its discretion by failing to hold an evidentiary hearing on his § 3006A(e)(1) motion. Section 3006A(e)(1) provides: "Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services." 18 U.S.C. § 3006A(e)(1). It appears to remain an open question in this court whether a hearing is statutorily required under § 3006A(e)(1). *See United States v. Robinson*, 95 F.3d 1153, 1996 WL 490379, at *11 (6th Cir. 1996) (per curiam) (unpublished table decision). But Carroll does not raise this issue, so we need not consider it now.

Rather, citing *United States v. Shields*, 850 F. App'x 406, 409–10 (6th Cir. 2021), Carroll contends that when a defendant puts forth a nonfrivolous claim, a district court should hold an evidentiary hearing to resolve any factual disputes. But *Shields* involved a double jeopardy claim and applied this court's "general rule" requiring evidentiary hearings when a defendant asserts a nonfrivolous claim of double jeopardy. *Id.* (quoting *In re Grand Jury Proceedings*, 797 F.2d 1377, 1385 (6th Cir. 1986)). This court, however, has not held that denial of a § 3006A(e)(1) motion requires such a hearing.

Even if we were to apply this rule in the § 3006A(e)(1) context, we would nonetheless conclude that the district court did not abuse its discretion by denying a hearing here.  A defendant is generally not entitled to an evidentiary hearing without "mak[ing] at least some initial showing of contested facts[.]"  *United States v. Giacalone*, 853 F.2d 470, 483 (6th Cir. 1988).  As discussed above, Carroll did not make any such showing in his § 3006A(e)(1) motion.

We accordingly conclude that the district court did not abuse its discretion in refusing to hold an evidentiary hearing on Carroll's § 3006A(e)(1) motion.

III.

For these reasons, we affirm.